IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE GUTIERREZ, | |
| Plaintiff, | |
| v. | Case No: |
| CITY OF AURORA, AURORA POLICE OFFICERS MATTHEW THOMAS MEYERS (# unknown) and C. MCCUE (# unknown), | Judge: |
| Defendants. | **JURY TRIAL DEMANDED** |

CIVIL COMPLAINT

Plaintiff GEORGE GUTIERREZ, by and through his undersigned attorneys at

First Defense Legal Aid, files this Complaint against Defendants CITY OF AURORA

and AURORA POLICE OFFICERS MATTHEW THOMAS MEYERS (# unknown)

and C. MCCUE (# unknown), and in support thereof states the following:

INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. §1983 to address

deprivations of PLAINTIFF GEORGE GUTIERREZ's rights under the Constitution

of the United States.

2.     On April 26, 2020, GEORGE GUTIERREZ was stopped by police near

his home for allegedly failing to signal while turning, a story which dashcam footage

does not back up.

3.      A short period of time after being seized, instead of releasing him or writing him a ticket, DEFENDANTS first discuss illegally extending the traffic stop to ask GUTIERREZ about his criminal history despite the fact that he is not on parole and does not have any outstanding warrants.

4.      While his minor niece and adult sister watched, outside the purpose of the traffic stop, GUTIERREZ and DEFENDANT OFFICERS had a brief conversation. Unsatisfied with GUTIERREZ'S demeanor during the stop, OFFICER MEYERS abruptly broke GUTIERREZ'S driver's side window and with the help of OFFICER MCCUE slammed GUTIERREZ'S head into a nearby van.

5.      Cell phone video shows that when DEFENDANT OFFICERS pulled GUTIERREZ from his car and slammed his head against the van, he was seated in his car, unarmed, and with his hands up in submission to police.

6.      GUTIERREZ, who is a community organizer who works towards creating positive relationships between police and the community, has watched the leadership of the city, for months and years, attempt to paint the department as free from misconduct. His own experience—both on April 26, 2020, and during other wrongful stops—shows that accountability in Aurora is present in name only. He brings this lawsuit to seek accountability.

JURISDICTION AND VENUE

7.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); and the

Constitution of the United States. Further, this Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over claims arising under Illinois state law.

8.      Venue is appropriate under 28 U.S.C. § 1391(b), as all defendants reside in this judicial district. In addition, a substantial part of the events giving rise to this claim occurred in this judicial district.

## PARTIES

9.      Plaintiff GEORGE GUTIERREZ (hereinafter "PLAINTIFF" or "GUTIERREZ") is a United States Citizen who at all times mentioned herein resided in the Northern District of Illinois. He is a community organizer and small business owner who works to improve life for the people of Aurora through work with a boxing club and community events.

10.     Defendant CITY OF AURORA is, and at all times mentioned herein was a municipality organized and operating under the statutes of the State of Illinois. It is authorized under the statutes of the State of Illinois to maintain the Aurora Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible. Defendant City was at all times material to this Complaint, the employer and principal of the Individual Defendants.

11.     AURORA POLICE OFFICERS MATTHEW THOMAS MEYERS (# unknown) and C. MCCUE (#unknown) were at all times relevant to this Complaint duly appointed and sworn law enforcement officers of the CITY OF AURORA, which

was and is their principal and employer. They are referred to collectively herein as the DEFENDANT OFFICERS.

12.     At all times relevant herein, DEFENDANT OFFICERS were acting in the scope of their employment and under color of state law.

13.     DEFENDANT OFFICERS are sued in their individual capacities.

<u>FACTS</u>

14.     At or about 10pm on April 26, 2020, PLAINTIFF was driving to his home going Southbound on S. Lake Street toward Jericho Road.

15.     PLAINTIFF properly applied his turn signal and made a right turn onto Jericho Rd.

16.     DEFENDANT OFFICERS MEYERS pulled his squad car from the left bound lane, cutting across traffic with no signal, and followed PLAINTIFF onto Jericho Rd.

17.     PLAINTIFF then again properly applied his turn signal and made a left turn onto Montgomery Avenue to enter his home, which is on the corner of Montgomery and Allaire Avenue.

18.     Despite seeing PLAINTIFF properly signal his turn, DEFENDANT OFFICER MEYERS activated his squad car's warning lights, turning onto Montgomery Ave. and pulling over PLAINTIFF outside his home.

19.     At the residence, PLAINTIFF provided his license to MEYERS and waited in his vehicle while MEYERS ran his license.

20.     After confirming that GUTIERREZ had no active warrants, parole status, or issues with license and registration, OFFICER MEYERS nonetheless illegally extended the stop when he learned that PLAINTIFF was a "registered violent offender" for a decades-old offense.

21.     DEFENDANT OFFICER MEYERS, despite having no probable cause that PLAINTIFF had committed any crime, stated to another officer who had driven to the scene, "I'm going to talk to him."

22.     Around the same time, while discussing what he was going to do next, MEYERS stated in a calm tone of voice, "There's just one in the car, he's been cool… he's being cool, he should be good," referring to PLAINTIFF's compliant behavior.

23.     At that point, DEFENDANT OFFICER MCCUE arrived at PLAINTIFF's residence, and MEYERS told PLAINTIFF to step out of his vehicle on the premise that "officers can order anyone out of the vehicle whenever they want." MEYERS threatened PLAINTIFF with an arrest for obstructing.

24.     A concerned PLAINTIFF repeatedly requested that DEFENDANT OFFICERS call a supervisor because he did not feel comfortable getting out of the vehicle due to the pretextual nature of the traffic stop and illegal extension of the stop. PLAINTIFF did not know if officers would illegally search his vehicle, cause him harm, manufacture probable cause for arrest, or take other action that would jeopardize his liberty.

25.     As PLAINTIFF continued to request a supervisor, DEFENDANT MEYERS threatened to charge PLAINTIFF with obstruction if PLAINTIFF did not exit his vehicle without a supervisor present.

26.     DEFENDANT MEYERS did not have reasonable suspicion or probable cause to believe that PLAINTIFF was concealing a weapon, contraband, or was committing any crime at the time he attempted to order PLAINTIFF from the vehicle, which occurred during the illegal extension of the traffic stop.

27.     MEYERS stated "I don't need a reason to pull you out of the vehicle… [an officer] doesn't need any reason." MEYERS stuck his hand inside the vehicle, and GUTIERREZ, alarmed, rolled up the window partially without touching MEYERS' hand.

28.     MEYERS shattered the driver's side window, opened the car door, pulled GUTIERREZ from his car, and, with DEFENDANT MCCUE, slammed GUTIERREZ's head against a van that was also parked in the driveway. See **Exhibit A**, screenshot of video footage, attached to and incorporated in this Complaint.

29.     At the time DEFENDANT OFFICERS pulled GUTIERREZ from the vehicle and slammed his head against a parked van, GUTIERREZ had his hands raised in the air in a gesture of compliance and to show officers he was no threat to their safety or of flight. See **Exhibit B**, screenshots of video footage, attached to and incorporated in this Complaint.

30.     DEFENDANT OFFICERS charged GUTIERREZ with obstructing an officer. That criminal proceeding is ongoing.

31.     PLAINTIFF suffered physical injury, emotional distress, humiliation, mental anguish, and pain and suffering, among other injuries, as a result of DEFENDANT OFFICERS' actions.

32.     As a direct and proximate result of the acts and omissions of DEFENDANT OFFICERS, plaintiff suffered damages including, but not limited to, pain and suffering, humiliation, mental anguish, and emotional distress.

## COUNT II: 42 U.S.C. § 1983 – UNLAWFUL SEIZURE
### Against Defendant Officers
### (Federal Claim)

33.     PLAINTIFF realleges paragraphs 1-32 as though fully set forth herein.

34.     On or about April 26, 2020, DEFENDANT OFFICERS unreasonably seized PLAINTIFF. DEFENDANT OFFICERS pulled PLAINTIFF over despite his compliance with traffic laws—an encounter clearly devoid of probable cause.

35.     DEFENDANT OFFICERS did not have reasonable suspicion or probable cause to believe that PLAINTIFF had committed, was committing, or was about to commit any offense, traffic or otherwise.

36.     DEFENDANT OFFICERS, after their initial seizure in traffic, unreasonably extended PLAINTIFF'S detention, constructively a second seizure, when, after running his license and finding no probable cause to detain, decided to extend the stop and talk to PLAINTIFF due to his appearance on the violent offender registry.

37.     Both of these seizures were objectively unreasonable; the first because PLAINTIFF did not, as officers alleged, fail to signal his turn, and the second because

after checking PLAINTIFF'S paperwork incident to the traffic stop, they extended the detention without reasonable suspicion or probable cause. *See, e.g., Rodriguez v. United States,* 575 U.S. 348, 353-54 (2015) ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop... [a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been— completed…. [Officers may ask questions but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.")

38.     The conduct of DEFENDANT OFFICERS in wrongfully seizing his vehicle directly and proximately caused PLAINTIFF to suffer, without limitation, humiliation, emotional distress, and loss of liberty.

39.     The misconduct described in this Count was willful and wanton and undertaken with malice, willfulness, and reckless indifference and conscious disregard for PLAINTIFF'S rights and safety.

40.     DEFENDANT OFFICERS were acting under color of state law and in the scope of their employment at all times material to this Complaint.

WHEREFORE, PLAINTIFF respectfully requests that this Court enter judgment in his favor, and against DEFENDANT OFFICERS, for compensatory damages, punitive damages, attorney's fees and costs, and any other relief that the Court deems just and equitable.

## COUNT II: 42 U.S.C. § 1983 – FALSE ARREST
### Against Defendant Officers
### (Federal Claim)

40.  PLAINTIFF realleges paragraphs 1-32 as though fully set forth herein.

41.  On or about April 26, 2020, DEFENDANT OFFICERS falsely arrested PLAINTIFF by arresting him for obstructing a peace officer without probable cause while in the midst of an unauthorized action: namely, unreasonably extending a traffic stop without probable cause or lawful justification.

42.  DEFENDANT OFFICERS did not have reasonable suspicion or probable cause to believe that PLAINTIFF had committed, was committing, or was about to commit any offense, traffic or otherwise.

43. The conduct of DEFENDANT OFFICERS directly and proximately caused PLAINTIFF to suffer, without limitation, pain and suffering, humiliation, emotional distress, and mental anguish.

44.  The misconduct described in this Count was willful and wanton and undertaken with malice, willfulness, and reckless indifference and conscious disregard for PLAINTIFF'S rights and safety.

45.  DEFENDANT OFFICERS were acting under color of state law and in the scope of their employment at all times material to this Complaint.

WHEREFORE, PLAINTIFF respectfully requests that this Court enter judgment in his favor, and against DEFENDANT OFFICERS, for compensatory damages, punitive damages, attorney's fees and costs, and any other relief that the Court deems just and equitable.

## COUNT III: 42 U.S.C. § 1983 - EXCESSIVE FORCE
### Against Defendant Officers
### (Federal Claim)

46.     PLAINTIFF re-alleges paragraphs 1-32 as though fully set forth herein.

47.     DEFENDANTS used excessive force against PLAINTIFF when they broke the window to his automobile, grabbed him from the car, and slammed his head against a parked van.

48.     PLAINTIFF had his hands raised in the air at the time when officers grabbed him and slammed his head against a parked van.

49.     PLAINTIFF was not resisting arrest nor committing or suspected of committing a serious crime at the time of the excessive force.

50.     PLAINTIFF was not attempting to flee the scene at the time of the excessive force.

51.     There was no risk that PLAINTIFF would flee the scene at the time of the excessive force.

52.     It is objectively unreasonable to throw a compliant detainee into a van by their head.

53.     The misconduct described in this Count was willful and wanton and undertaken with malice, willfulness, and reckless indifference and conscious disregard for PLAINTIFF'S rights and safety.

54.     DEFENDANT OFFICERS were acting under color of state law and in the scope of their employment at all times material to this Complaint.

WHEREFORE, PLAINTIFF respectfully requests that this Court enter judgment in his favor, and against DEFENDANT OFFICERS, for compensatory damages, punitive damages, attorney's fees and costs, and any other relief that the Court deems just and equitable.

### COUNT IV: 42 U.S.C. §1983- FAILURE TO INTERVENE
### Against Defendant Officers
### (Federal Claim)

55.     PLAINTIFF re-alleges paragraphs 1-32 as though fully set forth herein.

56.     DEFENDANT OFFICERS all were present and failed to intervene to stop the unreasonable violations of PLAINTIFF'S bodily integrity that were unsupported by reasonable suspicion or probable cause that PLAINTIFF was concealing weapons or contraband.

57.     DEFENDANT OFFICERS all had a reasonable opportunity to intervene and prevent the unreasonable force against and seizure of PLAINTIFF. Each of the DEFENDANT OFFICERS failed to take even the most basic action to stop the violations of PLAINTIFF'S body and rights.

58.     The conduct of DEFENDANT OFFICERS directly and proximately caused PLAINTIFF to suffer, without limitation, pain and suffering, humiliation, emotional distress, and mental anguish.

59.     The misconduct described in this Count was willful and wanton and undertaken with malice, willfulness, and reckless indifference and conscious disregard for PLAINTIFF'S rights and safety.

11

60.     DEFENDANT OFFICERS were acting under color of state law and in the scope of their employment at all times material to this Complaint.

WHEREFORE, PLAINTIFF respectfully requests that this Court enter judgment in his favor, and against DEFENDANT OFFICERS, for compensatory damages, punitive damages, attorney's fees and costs, and any other relief that the Court deems just and equitable.

## COUNT V: BATTERY
### Against Defendant Officers
### (State Law Claim)

61.     Gutierrez re-alleges paragraphs 1-32 as though fully set forth herein.

62.     Without the consent of PLAINTIFF, DEFENDANT OFFICERS intentionally, harmfully, and offensively touched him.

63.     PLAINTIFF was damaged by this intentional and unauthorized touching.

64.      Defendants MEYERS and MCCUE, as alleged above, battered Plaintiff when they forcefully removed Plaintiff from his vehicle without his consent and slammed his head into a van.

65.     Defendants MEYERS AND MCCUE's actions, as alleged above, were the direct and proximate cause of Plaintiff's injury.

66.     Defendants MEYERS AND MCCUE acted willfully and wantonly by displaying an utter indifference or conscious disregard for Plaintiff's safety while engaging in the aforementioned conduct that resulted in the battery.

67. DEFENDANT OFFICERS were acting under color of state law and in the scope of their employment at all times material to this Complaint.

68. The actions of each of the aforementioned individual defendants were the direct and proximate cause of the harm suffered by Plaintiff and caused Plaintiff to suffer physical injury, pain and suffering, mental anguish and emotional turmoil, humiliation, and long-lasting emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor against Defendants MEYERS AND MCCUE and award Plaintiff compensatory and punitive damages, court costs and attorneys' fees, as well as any other relief this Court deems equitable and just.

## COUNT VI: 745 ILCS 10/9-102 – INDEMNIFICATION
### Against the City of Aurora
### (State Law Claim)

69. PLAINTIFF re-alleges paragraphs 1-32 as though fully set forth herein.

70. DEFENDANT OFFICERS committed the acts alleged above while acting under color of state law, while on duty, and within the scope of their employment at the CITY OF AURORA.

71. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

72. As a proximate cause of the DEFENDANT OFFICERS' unlawful acts, which occurred within the scope of their employment activities, PLAINTIFF suffered physical and emotional injuries.

13

WHEREFORE, should DEFENDANT OFFICERS be found liable for any of the claims alleged in this Complaint, PLAINTIFF respectfully requests that that, pursuant to 745 ILCS 10/9-102, the CITY OF AURORA pay to PLAINTIFF any judgment obtained against DEFENDANT OFFICERS as a result of this action.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Daniel E. Massoglia

*One of Plaintiff's Attorneys*

Daniel Massoglia (#6317393)
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org

# Exhibit A

Case: 1:21-cv-02211 Document #: 1 Filed: 04/23/21 Page 16 of 19 PageID #:16



# Exhibit B



Case: 1:21-cv-02211 Document #: 1 Filed: 04/23/21 Page 19 of 19 PageID #:19

