**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE GUTIERREZ, | ) | No. 2021-cv-2211 |
| Plaintiff, | ) | |
| v. | ) | Hon. Judge Manish S. Shah |
| CITY OF AURORA, *et al.*, | ) | |
| Defendants. | ) | Hon. Magistrate Judge Jeffrey Cummings |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff George Gutierrez, by and through his undersigned counsel, responds to Defendants' Motion for Summary Judgment as follows:

## INTRODUCTION

On April 26, 2020, a pretextual traffic stop led to serious injury and violation of constitutional rights after Defendants Matthew Thomas Meyers and Cory McCue escalated a minor traffic infraction into an unjustified, excessive, and malicious attack on Plaintiff George Gutierrez. After Plaintiff refused commands to exit his vehicle for fear of his safety, Defendant Meyers broke his window, and, while Plaintiff's hands were raised in surrender, pulled him from the car with Officer McCue and together slammed his head against a parked van, giving him a concussion. Plaintiff lives with the effects of this assault to this day.

## STATEMENT OF FACTS

Plaintiff George Gutierrez is a pillar of his community. After serving more than two decades in prison for an offense committed when he was 20 years old, he threw himself into making Aurora a better place, running a boxing gym for youth. Plaintiff's Statement of Additional Facts ¶¶ 36-37 ("PSAF"). On April 26, 2020, Plaintiff was pretextually pulled over for signaling only 80.74 feet before making a turn, as opposed to the requisite 100 feet after Defendant Meyers

followed him across two lanes of traffic without making a turn signal and prior to his committing any traffic offense. PSAF ¶¶ 1-2. Plaintiff pulled over in his driveway, provided his license to Defendant Meyers, and informed him when asked that he did not have anything illegal or that Defendant should worry about in the car. PSAF ¶¶ 3-4.

Upon reviewing a LEADS report showing a prior gang affiliation for Plaintiff and his presence on the violent offender registry, Defendant Meyers stated that he did not need backup because Plaintiff's demeanor was "cool." PSAF ¶¶ 5-6. According to the criminal judge, Defendant Meyers did not have reasonable articulable suspicion to believe that any offense beyond a traffic infraction had been committed at this point, but he nonetheless decided to further detain Plaintiff for the sole purpose of asking him questions about his background. PSAF ¶¶ 7-8. Defendant Meyers asked Plaintiff to exit the vehicle despite the fact that he could clearly see in the windows of the vehicle in a well-lit area, that Plaintiff was not acting nervous, that there was no reasonable articulable suspicion of any offense beyond a traffic infraction, and that Plaintiff had already told him that there was no contraband in the vehicle. PSAF ¶¶ 4, 7, 9-11. Plaintiff calmly asked for a supervisor to de-escalate the situation, fearing for his safety, which he explained. PSAF ¶¶ 13-14. According to the criminal judge, the interaction prior to Defendant Meyers' discovery of Plaintiff's background, and ensuing escalation, was "cordial." PSAF ¶ 38.

After a back and forth in which Defendant Meyers described the offense at issue—obstructing, for not following orders—as "petty," Defendant Meyers placed his hands inside the vehicle and Plaintiff rolled up his window part way, stopping before the window reached the doorframe. PSAF ¶¶ 15, 17, 33. Defendant Meyers then broke the window and Plaintiff immediately placed his hands up in surrender to the Officers, stating "my hands are right here." PSAF ¶¶ 18-19. According to Defendant Meyers, the Officers had Plaintiff under control at that

time, PSAF ¶ 35, but they nonetheless slammed his head against a nearby van, giving him a concussion. PSAF ¶¶ 20-22. Officer McCue's head was on the back of Plaintiff's head. PSAF ¶ 21. Plaintiff was not fleeing or attempting to flee, resisting arrest, or suspected of a serious crime at the time, and made no movements towards the Defendants at the time of the use of force. PSAF ¶¶ 29-33. Plaintiff was not armed and there was no contraband in the vehicle. PSAF ¶ 32.

During the interaction, Plaintiff's 15-year-old niece and his sister, who was in pajamas, watched from approximately 10 feet away, to the side of the officers. PSAF ¶¶ 24-25. They did not take any threatening actions towards the officers, nor did officers perceive a threat, and they alerted officers to their presence upon their approach, and later moved back when instructed. PSAF ¶¶ 26-28.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quoting *Lawrence v. Kenosha County,* 391 F.3d 837, 842 (7th Cir.2004)) (internal quotations omitted). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear,*

*Inc. v. Westfield Ins. Co*., 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-moving party. *Zuppardi v. Wal–Mart Stores, Inc*., 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp*., 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir.2009).

## I. DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON COUNT III (EXCESSIVE FORCE).

The parties to this action dispute myriad facts that are material to the question of whether the force the officers used was excessive. To the extent facts are agreed upon, they are favorable to the Plaintiff. It was objectively unreasonable for Defendants to slam George Gutierrez's head into a van while he was not suspected of a serious crime, was not a threat to officers or others, was not resisting or fleeing, and while his arms were raised in surrender. Thus, summary judgement on the excessive force claim is inappropriate.

### A. Whether Defendants Used Unjustifiable Force Against Plaintiff Is Subject To Disputed Interpretations, And Cannot Be Resolved At This Stage

The record before the Court is marked by consistent and repeated disputes of fact which preclude the granting of summary judgment in favor of Defendants here. Despite this—and ignoring that the entirety of the incident is captured on video—Defendants have chosen to file an arguably wasteful motion for summary judgment on excessive force, ignoring 7th Circuit guidance that "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v.*

4

*Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *see also Phillips v. Community Ins. Corp.*, 678 F. 3d 513, n.4 (7th Cir. 2012) ("we certainly agree that summary judgment is frequently inappropriate in excessive force cases").

In excessive force claims, the analytical baseline is that an officer's use of force must be reasonable under the Fourth Amendment. *Smith v. Ball State Univ.,* 295 F.3d 763, 770 (7th Cir. 2002). The analysis "requires careful attention to the facts and circumstances of each particular case, including the (1) severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (internal numbering added).

### 1. All *Graham* Factors Are In Dispute Or In Plaintiff's Favor

#### a. Mr. Gutierrez Was Not Being Investigated for a Serious Crime.

Despite Defendants' attempt to muddy the waters by invoking the specter of a thirty-year-old criminal record and prior gang membership, it is undisputed that the crime at issue here was a minor one. Mr. Gutierrez was pulled over because he failed to signal a turn 100 feet before a traffic stop, a traffic infraction, and was ultimately arrested for the nonviolent misdemeanor crime of obstructing a peace officer when he disobeyed an order to exit his vehicle, asking for a supervisor instead. Defendant Officer Meyers acknowledged at the time that Plaintiff's refusal to exit his vehicle was a "petty" situation over which to risk arrest.

#### b. Mr. Gutierrez did not pose an immediate threat to the safety of the officers or others.

The threat Mr. Gutierrez allegedly posed to the safety of officers or others is disputed. Mr. Gutierrez testified that he was not behaving in a nervous manner, and video shows him informing officers there was nothing illegal in the car when asked as well as attempting to de-escalate the

situation by calmly requesting that a supervisor come to the scene. There is no evidence before the Court that Defendants believed Plaintiff had a weapon or that he had one, nor any evidence that Plaintiff acted aggressively to officers. Officers remarked that he was acting "cool" at the outset of the traffic stop, and the criminal court judge repeatedly described the interaction, prior to Defendants' escalation, as "cordial." Plaintiff immediately put his hands up after Defendant Meyers broke his window, which he had rolled up part-way after Defendant Meyers put his hands inside the car.

The Motion's attempt to paint the situation as rapidly evolving, dangerous, and chaotic by describing of a "group of people" standing behind Defendants is misplaced, and further impermissibly relies on Defendants' version of events. Motion at 5. The group of people, was, in fact, known by Defendants to be Plaintiff's family, and were a) Plaintiff's fifteen-year-old niece and b) her pajama-wearing mother. They were standing ten feet away in view to Defendants side, not behind them, notified officers of their approach by making the submissive gesture of raising hands to let them know everything was okay, attempted to verbally de-escalate the situation, and later stepped back when instructed to by Defendants. This "group" was not a rowdy mob.

Construing the facts in the light most favorable to the Plaintiff, as the Court must, it is evident that this is not a situation where a Plaintiff posed an immediate threat to the safety of the officers or others.

      c. <u>Mr. Gutierrez was neither actively resisting, nor fleeing, nor attempting to evade arrest</u>.

Plaintiff's conduct with regard to the arrest is further in dispute or in his favor, in that he was not actively resisting, fleeing, or attempting to evade arrest. Defendant's Motion maintains that Plaintiff had been "continuous[ly] non-compliant" throughout their interaction. Motion at 1, 8, 11. This characterization is, principally, wrong, given that Plaintiff raised his hands in

submission after Defendants broke his window and said "my hands are here," actions indicating that he was allowing officers to handcuff him. Also, to describe Plaintiff as "non-compliant" for the whole encounter elides record evidence that Plaintiff was complaint, cool, and cordial prior to the point when Defendants asked him to exit the car.[1]

Plaintiff was not charged with resisting arrest, which makes sense, because he did not resist arrest. He was not charged with fleeing and eluding officers, which makes sense, because he did not flee or attempt to flee. During their depositions, Defendants admitted that Mr. Gutierrez was not actively resisting arrest or fighting them. And from the video, it is evident that Mr. Gutierrez offered no flight or resistance.

All this leaves for the Court is a fruitless attempt to leverage vague, and disputed, allegations that the situation made the officers feel unsafe into a post-hoc justification for the vindictive and malicious slam of a compliant detainee by his head into a van. Mr. Gutierrez was convicted of obstructing an officer for disobeying an order to exit his vehicle, but the legal punishment for refusing an order to leave a vehicle and subsequently putting your hands up to allow an eventual arrest was the province of the criminal court, not overzealous police action.

### B. Other Aspects Of The Totality Of The Circumstances Are In Dispute

There are additional disputed facts contributing to the totality of the circumstances facing the parties on April 26, 2020 that must be resolved by a jury

To start, the parties disagree as to something as fundamental as what force was used. Plaintiff describes the force at issue in Defendants' decision to slam his head against a parked van while his arms were raised in surrender, an action that gave Plaintiff a concussion. The Motion,

---

[1] It bears noting that the Seventh Circuit recognizes that "willful non-compliance [is] not the same as 'actively resisting'" *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012) (quoting *Smith v. Ball Univ.,* 295 F.3d 763, 771 (7th Cir.2002)).

however, describes the issue more mildly, framing the question as one of Defendants' decision to "push [Plaintiff] against a van to assist in handcuffing him." Motion at 9. Although this dispute is somewhat remarkable given that two cameras captured Defendants flinging Plaintiff into a van by his head, it is, at minimum, a question for a jury, not one for resolution in the moving party's favor on summary judgment. *See Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (fact disputes as to necessary amount of force and amount of force used rendered summary judgment for defendants on plaintiff's claim for excessive force inappropriate). Plaintiff is not saying that being handcuffed violates the constitution; he is saying that these officers used far more force than needed to accomplish that objective, violating the constitution. Given this, to grant summary judgment in favor of Defendants on Plaintiff's excessive force claim would improperly override the jury's prerogative to weigh this dispute amidst the totality of the circumstances. *Id*.

Further, Defendants' Motion attempts to paint a picture of a chaotic scene in which officers were forced to make split-second decisions to protect themselves, but the record before the Court does not bear this out. For example, while the Motion postulates that by partially rolling up his window after Defendant Meyer stuck his hands inside the vehicle, Motion at 4, Plaintiff might have crushed Defendant Meyers' fingers, this argument is ineffective for two reasons. First, it again attempts to resolve a disputed fact in Defendants' favor, as Plaintiff testified that he *stopped* rolling up the window before it could have pinned Defendant Meyers' hands. Second, it rests on a distorted sequencing of events; after Defendant Meyers broke Plaintiff's window, Plaintiff immediately put his hands up in surrender, showing there was no threat to the officers. Plaintiff's account, and the videos, depict a situation where he remained calm and cordial, attempted to speak with a superior officer and de-escalate, illustrating that the Defendants were under no threat, urgency, or time-pressure when they used gratuitous force against him. And, what Defendants

8

attempt to define as a split second or two, Plaintiff (and the video) defines as, at least, 17 full seconds during which the officers had obtained his surrender, neutralized any threat, but nonetheless decided to apply unconstitutionally excessive force. At minimum, evaluations of supposed split-second timing and urgent, evolving decision-making are based on disputed facts and should not override a jury's prerogative to objectively assess the totality of circumstances which envelop the Defendants' actions. *See Cyrus v. Town of Mukwonago*, 624 F.3d at 862.

The parties also disagree as to what the Defendant Officers understood about the Plaintiff's background as from the alert on their computer, and whether the tint on Plaintiff's windows prevented Defendants from seeing into the car. The parties dispute whether Plaintiff's family watched from the side or from behind. On these disputed facts, and others, Summary Judgment in Defendants' favor would be inappropriate.

### C. Viewing Disputed Facts In The Light Most Favorable To Plaintiff, Summary Judgment Is Inappropriate

Viewing the evidence in the light favorable to Plaintiff, the objective facts to consider as of the time Mr. Gutierrez's was violently thrown into a van by his head are: (1) Ms. Gutierrez was not suspected of a severe crime; (2) Mr. Gutierrez calmly, verbally attempted to calm a pretextual traffic stop by requesting the officers' supervisor, rolled up his driver's side window part way after Defendant Meyers put his hands on the window, stopping before Defendant Meyers' hands were touched, and then raised his arms in surrender after Defendant Meyers broke his window; and (3) Mr. Gutierrez was neither resisting, fleeing, nor a threat of fleeing when Defendants broke his car window and then threw him into the van. The question is whether, given this, a reasonable jury could find that throwing Plaintiff's head into a van was objectively unreasonable.

On these facts a jury could find that the use of force was not reasonable and was excessive. *See, e.g.*, *Hill v. Miller*, 878 F. Supp 114, 116 (N.D. Ill. 1995) ("the use of any significant force ...

not reasonably necessary to effect an arrest—as where the suspect neither resists nor flees or where the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable"); *McNew v. Pleasant*, 1992 WL 162255, at *4 (N.D. Ill. 1992) (jury exercised proper fact-finding discretion when it determined that police could have stopped a suspect by pulling him rather than using the more severe action of taking him to the ground).

**D.  A Person's Criminal History Does Not Authorize Objectively Unreasonable Force**

Throughout the Motion, though without direct citation to controlling authority, Defendants attempt to use Plaintiff's presence on a violent offender registry and his prior gang affiliation as justification for their use of unnecessary force. This is not the law, and the effort should be rejected.

In section 1983 use of force cases, a defendant's knowledge or belief of a plaintiff's criminal history, gang status, and background, while relevant, does not equal a blanket authorization to use force. *See Graham v. Connor*, 490 U.S. at 396 and *Tennessee v. Garner* 471 U.S. 1, 8-9 (1985) (totality of the facts and circumstances considered in evaluating reasonableness of force). There is no legal rule that Plaintiff is aware of that suggests that someone's presence on a criminal registry offers license to brutalize.

Multiple recent decisions from this courts in this District illustrate this bedrock principle of objective reasonableness inquiry. In *Est. of McIntosh by Lane v. City of Chicago*, for example, an excessive force claim survived summary judgment where the plaintiff, whom police believed to be armed, ran from the police in an area recognized as gang territory. No. 15-cv-01920, 2022 WL 4448737, at *6 (N.D. Ill. Sept. 23, 2022). Similarly, in *Davis v. Abdeljaber*, a different court held that a reasonable jury could find that force in a correctional setting was objectively unreasonable even where the officers knew of that plaintiff's significant disciplinary history, aggressive behavior, habitual non-compliance, conviction for aggravated battery to a peace officer,

10

pending charge for attempted murder, and non-compliance with several recent commands. *Davis v. Abdeljaber*, 2021 WL 1172597, at *3-4 (N.D. Ill. Mar. 29, 2021).

A person's simple presence on a violent offender registry and prior gang membership do not tip any of the *Graham* factors in Defendants' favor; it is objectively unreasonable to throw a non-resisting, non-fleeing person suspected of a misdemeanor into a van by their head while their family watches. *See Cyrus*, 624 F.3d at 863 ("Force is reasonable only when exercised in proportion to the threat posed.").

**E.  Defendants' Case Law Does Not Support Judgment In Their Favor**

The Motion cites three cases as analogous support to the instant case, but these cases were based on distinguishable facts and should not control the Court's view of the case at hand.

First, the Motion cites *Horton v. Pobjecky, et al*, 883 F.3d 941, 948 (7th Cir. 2003) for the uncontroversial proposition that time and duress, and the need to make split second decisions under intense, dangerous, uncertain, and rapidly changing circumstances, are considered in excessive force analysis. Motion at 8. Setting aside the fact that the parties dispute whether the circumstances were intense, dangerous, uncertain, and rapidly changing, the *Horton* case is not a good exemplar for the facts here. That case involved a situation where armed men committed a robbery and bystanders struggled for their lives during its course. *Horton v. Pobjecky, et al*, 883 F.3d at 944-947. This is self-evidently distinguishable from a situation where an unarmed man sat with his hands up in a vehicle, only to be slammed by his head into a nearby van.

The Motion also cites *Nabors v. City of North Chicago*, arguing that Defendants' use of physical force was brief and tailored to the objective of handcuffing and therefore reasonable. Motion at 8-9 (citing No. 19-cv-06877, 2021 WL 5493234 (N.D. Ill. 2021)). *Nabors*, however, is distinguishable for multiple reasons. First, *Nabors* was decided at a bench trial, and the Court thus

evaluated witness credibility, weighed evidence, and determined truth, something that is impermissible here, where the inquiry is focused on determining whether there are disputes requiring fact-finding and credibility determinations at trial. 2021 WL 549234 at *1; *Nat'l Athletic Sportswear, Inc.*, 528 F.3d at 512. In that vein, the *Nabors* Court declined to credit that plaintiff's claims of having suffered any injury to his head during handcuffing, *Nabors,* 2021 WL 549234. at *3, whereas Mr. Gutierrez has presented evidence that he suffered a concussion as a result of Defendants' actions. Further, the *Nabors* plaintiff resisted handcuffing through motions of his body, using a cellphone with his left hand, *Id.* at *2, while Plaintiff here has shown that he did not actively resist arrest, was not charged with resisting arrest, and did not pull away from officers. Video evidence demonstrates that he held both hands aloft in surrender from the moment officers broke his window, *prior* to the use of force. Thus, the trial conclusion that the force used in *Nabors* was reasonable and clearly tailored to the objective of handcuffing is not instructive for this case.

Similarly, the Motion's analogy to *Williams v. Brooks*, 809 F.3d 936 (7th Cir. 2016) does not hold water. In *Williams*, the Seventh Circuit deemed the force used to arrest the plaintiff to be justified because, *inter alia,* it considered the plaintiff an immediate threat where he had exited his vehicle during a traffic stop and refused repeated commands to return to it. *Id.* at 944. The Motion cites *Williams* as indicating that a *"*reasonable amount of force was used when plaintiff refused to follow the defendant officer's orders," omitting the distinguishing fact of the *Williams* plaintiff's suspected intoxication and eliding crucial differences between the *Williams* plaintiff's active, violent resistance—including that he "threw an elbow" at an officer—and Mr. Gutierrez's compliant surrender to Defendants here. *Id.* at 939-941. Further, the *Williams* plaintiff pushed against officers and ripped his hands away from them, a marked departure from this situation before the Court. *Id.* Finally, Williams' actions could also be construed as an attempt to flee, while

Plaintiff's actions and all record evidence here indicates that Plaintiff would have remained in his vehicle awaiting a supervisor's attention, removing any threat that could be perceived to necessitate Defendants' use of force. *See Dawson v. Brown*, 803 F.3d at 833 (7th Cir. 2015) (Goal in examining [*Graham* and progeny's] factors is to determine if "force used to seize the suspect was excessive in relation to the danger he posed... if left unattended") (internal citation omitted).

## II. QUALIFIED IMMUNITY DOES NOT APPLY BECAUSE IT WAS CLEARLY ESTABLISHED IN 2020 THAT POLICE OFFICERS CANNOT THROW A COMPLIANT DETAINEE INTO A VAN BY THE HEAD

Defendant Officers McCue and Meyers make a half-hearted argument in favor of qualified immunity in their Motion, but they are not entitled to it because it was clearly established at the time of the parties' interaction that officers cannot throw a non-resisting detainee who posed no threat and whose arms were up in surrender forehead-first into a vehicle.

"To determine whether a defendant is entitled to qualified immunity, courts address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation," though not necessarily in that sequence. *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To defeat qualified immunity, a plaintiff may put forth closely analogous cases to the facts at hand or offer "evidence that the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir. 1993). "General statements of the law are not inherently incapable of giving fair and clear warning to officers" as to whether a right is clearly established. *White v. Pauly,* 137 S.Ct. 548, 552 (2017) (*per curiam*) (internal quotations omitted).

Prior to 2020, it was well established in the Seventh Circuit "that police officers [may] not use significant force on nonresisting or passively resisting suspects." *Abbott v. Sangamon Cnty.*,

705 F.3d 706, 727 (7th Cir. 2013); *see Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (identifying relevant criteria in excessive force qualified immunity analysis: whether a plaintiff was attempting to harm an officer, resist or evade arrest, or flee, and the severity of alleged offenses). Mr. Gutierrez was not a resisting subject, nor attempting to harm or evade an officer, nor alleged to have committed a serious crime. Video clearly depicts him with his hands up raised beside his head in a gesture of surrender prior to and during the use of significant force. These videos, and the record before the court, demonstrate that qualified immunity is not appropriate.

Even crediting Defendants' contentions regarding their knowledge at the time of Plaintiff's background, officer safety, Plaintiff's supposed nervousness, or alleged noncompliance—which it cannot at this stage—qualified immunity would be inappropriate. *Abbott v. Sangamon Cnty.*, 705 F.3d at 730 ("Permitting substantial escalation of force in response to passive noncompliance would be incompatible with our excessive force doctrine and would likely bring more injured citizens before our courts.") (citation omitted); *see also Miller v. Gonzalez*, 761 F.3d at 829 (7th Cir.2014) ("[the] prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon."). As a result, throwing Mr. Gutierrez into a van by his head was an unreasonable, significant use of force against a non-resisting suspect, the very conduct proscribed by the Fourth Amendment generally and the more specific rules set forth in *Abbott*, *Payne*, and *Miller*. 705 F.3d 706 at 727, 730; 337 F.3d 767 at 779; 761 F.3d at 829.

Finally, given that facts ranging from Mr. Gutierrez's actions to Defendants' knowledge to the *very nature of the force itself* are in dispute, qualified immunity is not appropriate here because "[s]ummary judgment cannot be granted where a qualified immunity claim rests

on disputed facts." *Hudson v. City of Chi.*, No. 14-cv-06267, 2017 U.S. Dist. LEXIS 106450, at

*20 (N.D. Ill. July 10, 2017) (citing *White v. Gerardot*, 509 F.3d 829, 834 (7th Cir. 2007)).

## III.    BECAUSE OFFICERS WERE NOT AUTHORIZED TO SLAM PLAINTIFF'S HEAD INTO THE VAN, THE BATTERY CLAIM STANDS

In Illinois, a battery is the unauthorized touching of the person of another and is an

intentional tort. *Fiala v. Bickford Sr. Living Group, LLC*, 2015 IL App (2d) 150067, 43 N.E.3d

1234, 1240 (2nd Dist. 2015). Here, although it is undisputed that Defendants were authorized to

handcuff Plaintiff, the nature of the force is disputed, and the fact is that Plaintiff did not authorize

Defendants to slam his head into a van. Probable cause to arrest is not leave to use the force of

your choosing nor absolution for a civil battery. *McGovern v. Vill. of Oak Lawn*, No. 01-cv-3772,

2003 WL 139506, at *1, *7 (N.D. Ill. Jan. 17, 2003) (civil battery claim survived summary

judgment along with excessive force despite that facts in record demonstrated probable cause

existed to arrest). A jury could also find that this conduct—throwing a compliant detainee's head

against a van—was willful and wanton and made in conscious disregard for Plaintiff's safety. *See*

745 ILCS 10/2-202, 1-210 (defining willful and wanton conduct, a pre-requisite for government

employee liability on some state law torts, as "a course of action which showed an actual or

deliberate intention to cause harm or which, if not intentional, shows an utter indifference or

conscious disregard for the safety of others.") 745 ILCS 10/1-210. Defendants' actions fall into

this category of conduct, or at minimum this is disputed.

## IV.    THE INDEMNIFICATION CLAIM IS VIABLE BECAUSE PLAINTIFF CAN ESTABLISH LIABILITY AGAINST DEFENDANTS

As noted within, because Plaintiff can establish liability against the defendants on

multiple claims, the indemnification claim remains viable and should not be dismissed.

Respectfully submitted,

/s/Daniel E. Massoglia

15

*One of Plaintiff's Attorneys*

Daniel Massoglia
Ashley Rodriguez
Dan Lastres
Joseph DiCola
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708 797 3066
E: daniel@first-defense.org
E: ashley@first-defense.org
E: lastres@first-defense.org
E: joseph@first-defense.org
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel Massoglia, an attorney, hereby certify that a copy of this document was filed on

March 1, 2023 using the CM/ECF system, which generates electronic notice to all parties of record.

Respectfully submitted,

<u>/s/ Daniel E. Massoglia</u>

*One of Plaintiff's Attorneys*