**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE GUTIERREZ, ) | No. 2021-cv-2211 |
| Plaintiff, ) | |
| v. ) | Hon. Judge Manish S. Shah |
| CITY OF AURORA, *et al.*, ) | |
| Defendants. ) | Hon. Magistrate Judge Jeffrey Cummings |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF FACTS**

Plaintiff George Gutierrez, by and through his undersigned attorneys, presents the following Response to Defendants' Statement of Material Facts pursuant to Local Rule 56.1 of the Federal Rules of Civil Procedure:

**EXHIBITS FOR PLAINTIFF'S RESPONSE**

**TO DEFENDANT'S STATEMENT OF FACTS[1]**

- Plaintiff's Exhibit 1 – Officer Meyers Dashcam Video
- Plaintiff's Exhibit 2 – Officer Meyers Deposition Transcript
- Plaintiff's Exhibit 3 – C.Y Video
- Plaintiff's Exhibit 4 – Transcript of Criminal Proceeding *People v. Gutierrez*, November 19, 2021 (Day 1)
- Plaintiff's Exhibit 5 – C.Y. Deposition Transcript
- Plaintiff's Exhibit 6 – Transcript of Criminal Proceeding *People v. Gutierrez*, January 4, 2022 (Day 2)
- Plaintiff's Exhibit 7– Juanita Yanez Deposition Transcript
- Plaintiff's Exhibit 8 – Officer McCue Deposition Transcript
- Plaintiff's Exhibit 9 – Diagnosis of Treating Physician Jose Trevino
- Plaintiff's Exhibit 10 – Declaration of George Gutierrez
- Defendants' Exhibit E – Plaintiff George Gutierrez Deposition Transcript (Dkt. 43-4)

**Incident on April 26, 2020**

---

[1] Plaintiff's Exhibits 1-10 were filed as Dkt. 48-1 - 48-10. Defendants' Exhibit E, also cited here, was filed as Dkt. 43-4.

1. On April 26, 2020, Officer Meyers pulled Plaintiff over for failure to display a turn signal within one hundred feet of an intersection. [Deposition of Officer Meyers attached hereto as Exhibit A, pp. 21:8-17, 26:7 – 32:4; Officer Meyers' dash cam footage attached hereto as Exhibit B; November 19, 2021 Criminal Trial Transcript attached hereto as Exhibit C, pp. 7:19-24; 11:4 – 19, 15:5 -16:16.]

**RESPONSE:** Disputed to the extent that Officer Meyers *initially* stated that he followed Plaintiff across two lanes of traffic, without using a traffic signal, and before Plaintiff committed a traffic violation, because he "began to slow down and hit the brakes a couple of times" while approaching a stoplight at Jericho and Lake St. *Exhibit 4, Criminal Trial Transcript Day 1, p. 38:8-17.*

2. Upon approach, Officer Meyers observed Plaintiff's vehicle had tinted windows and observed Plaintiff displaying nervous behavior. [Ex. C, pp. 18:21 - 19:20, 20:4 – 6.]

**RESPONSE:** Disputed. Defendant Meyers does not make statements to Mr. Gutierrez or other officers on scene indicating that Plaintiff is displaying nervous behavior. In fact, Defendant Meyers tells Defendant McCue and another responding officer twice that "he's cool" when referring to Mr. Gutierrez. Plaintiff further testified that he was not displaying nervous behavior of the kind that Defendant Meyers described. *Exhibit 1, Defendant Meyers Dashcam Video 5:20:00; Exhibit 2, Meyers Deposition p. 38:17-25*; *Exhibit 4, Criminal Trial Transcript Day 1, p. 84:13-16.*

3. Officer Meyers made contact with Plaintiff, advised Plaintiff why he had pulled Plaintiff over and asked for Plaintiff's driver's license. [E. B, Ex. C. pp. 16:17 – 17:20.]

**RESPONSE:** Undisputed.

4. Officer Meyers took Plaintiff's driver's license back to his squad car to determine Plaintiff's status including whether there were any cautions and/or warrants out for Plaintiff's arrest. [Ex. A, 36:12 – 20; Ex, B, Ex. C, pp. 17:21 – 18:4.]

**RESPONSE:** Undisputed.

5. Officer Meyers determined that Plaintiff was a registered violent offender and a documented gang member. [Ex. A, pp. 39:7 – 40:2; Ex. C, pp. 18:5- 10; Deposition of George Gutierrez attached hereto as Exhibit E, p. 125:1 - 17.]

**RESPONSE:** Disputed. Defendant Meyers testified at his deposition that his status check of Mr. Gutierrez did not specify whether Mr. Gutierrez was a "documented gang member." Rather, he testified that it indicated an affiliation with a gang at "some point in time," so Plaintiff disputes the implication that Officer Meyers determined the Plaintiff to be documented as an active gang member at that time. Further, the dash camera footage indicates that Defendant Meyers stated that this gang affiliation was "prior." *Exhibit 2, Meyers Deposition pp 39:7-40:2; Exhibit 4, Criminal Trial Transcript Day 1, p. 38:8-17; Exhibit 1, Dashcam 00:05:22-00:05:27.*

6. While Officer Meyers was running Plaintiff's driver's license through the Aurora Police Department's system, Officer McCue came on the scene. [Ex. A, 87:3 – 21; Ex. C, pp. 18:16 – 20.]

3

**RESPONSE:** Undisputed.

7. As Officer Meyers reapproached Plaintiff's vehicle, he again observed that Plaintiff's vehicle had tinted windows and observed for a second time Plaintiff's nervous behavior. [Ex. A, 41:20 – 43:12; Ex. C, pp. 18:21 - 19:20, 20:4 – 6.]

**RESPONSE:** Disputed. Defendant Meyers had not previously witnessed any nervous behavior from Mr. Gutierrez nor had Defendant Meyers made this known. Defendant Meyers did not witness any nervous behavior from Mr. Gutierrez. Mr. Gutierrez responded, "nothing" to Defendant Meyers when he asked what Plaintiff was nervous about, said "it's okay," and further responded, "I'm not," all in a calm demeanor. Plaintiff further testified at the criminal trial and at his deposition that he was not displaying nervous behavior of the kind that Defendant Meyers alleged. A witness to the interaction testified that Plaintiff was "calm." *Exhibit 1, Dashcam 00:04:40-00:05:21, 00:05:45-00:06:07, 00:7:10-00:7:19; Exhibit 2, Meyers Deposition p. 42:1-25, p. 43:1-11; Exhibit 4, Criminal Trial Transcript Day 1, p. 84:13-16; Exhibit 6, Criminal Trial Transcript Day 2, p. 126:10-13; Defendants' Exhibit E, Plaintiff's Deposition p. 51:4-8.*

8. Due to the tint on the Plaintiff's vehicle's windows, Officer Meyers and Officer McCue were unable to see clearly into the vehicle. [Ex. A, 41:20 – 43:12; Ex. C, pp. 19:9-13, 20:8 – 18, 61:3-5, Deposition of Officer McCue attached hereto as Exhibit F, p. 23:4-6.]

**RESPONSE:** Disputed. Defendant Officers were equipped with flashlights, allowing them to see into Mr. Gutierrez's vehicle, and Mr. Gutierrez's front driver's side window was rolled all the way

down. While on the scene, neither officer stated that they were unable to see into Mr. Gutierrez's vehicle during the second portion of the traffic stop after the officers extended it. Further, squad car lights lit the scene, Officers had flashlights into the car, and witnesses could see clearly through the windows due to the flashlight(s).The criminal court stated that "the area was pretty well lit." *Exhibit 1, Dashcam 00:6:18-00:6:21; Defendants' Exhibit E, Plaintiff's Deposition p. 58:4-10; Exhibit 4, Criminal Trial Transcript Day 1 p. 95:5-7; Exhibit 3, C.Y. Video 00:00:00-00:50:00; Exhibit 5, C.Y. Deposition p. 10:12-24; Exhibit 6, Criminal Trial Transcript Day 2 p. 159:15.*

9. The tinted windows combined with Plaintiff's nervous behavior made Officer Meyers fear for his safety, so Officer Meyers asked Plaintiff to step out of his vehicle. [Ex A, p. 38: 4 – 9; 41:20 – 43:12; 45:5 – 7 47:8 – 17, 87:3 – 21; Ex. C, p. 20:7 – 18, 23:20 – 24:7, 46:9 – 22, Deposition of Cynthia Yanez attached hereto as Exhibit G, pp. 13:1 – 15:4, Deposition of Juanita Yanez attached hereto as Exhibit H, pp. 13:1 – 14:16, Bystander Videos attached hereto as Group Exhibit I.]

**RESPONSE:** Disputed. Plaintiff was not displaying nervous behavior and the tinted windows did not prevent Defendants from seeing into the vehicle. *See* Plaintiff's Response to Defendants' Statement of Facts # 2, 7, 8. Rather, Defendant Meyers told Mr. Gutierrez as justification for his order to leave the vehicle that "[he] can order anyone in and out of the vehicle whenever [he] want[s]." *Exhibit 2, Defendant Meyers' Deposition p. 44:25, 45:1-7; Exhibit 1, Dashcam 00:06:26 -00:06:38.*

5

10. Plaintiff refused and asked for a supervisor; Officer McCue called for the supervisor. [Ex. A, 87:3 – 21; Ex B; Ex. C, p. 20:19-22, 21:14 – 20, 50:11 – 20, 62:2 – 63:13; Ex. E, 34:24 – 36:3, 44:6-21, Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16,

**RESPONSE:** Disputed. Mr. Gutierrez did not immediately refuse to step out of his vehicle as this statement implies. Rather, Plaintiff inquired as to why he was being ordered to get out of his car – Mr. Gutierrez, concerned about his own safety and privacy within his vehicle, did not understand why he had to get out of his car for a simple traffic stop for failing to signal given that he had provided identification to the officers as requested. Mr. Gutierrez subsequently requested a supervisor out of fear. Defendant Meyers refused to call a supervisor until Mr. Gutierrez exited the car. Plaintiff repeatedly requested Defendant Meyers to call a supervisor to which Defendant Meyers responded by insisting that he didn't need any reason to pull someone out of their vehicle. Mr. Gutierrez continued to request a supervisor for his own safety. Defendant McCue finally requested a supervisor approximately 6 minutes after Plaintiff's initial request. *Exhibit 1, Dashcam 00:06:28-00:12:35, 00:09:08-00:09:13; 00:11:25-00:11:37; Exhibit 6, Criminal Trial Transcript Day 2, p. 144:3-4.*

11. Officer Meyers told Plaintiff his supervisor was coming and also told Plaintiff that he would still have to follow Officer Meyers' order to exit the vehicle. [Ex. A, 87:3 – 21; Ex. B, Ex. C, pp. 50:11 – 51:12, Group Ex. I.]

**RESPONSE:** Undisputed.

6

12. For approximately eight minutes, Officer Meyers ordered Plaintiff approximately ten times to step out of his vehicle and, each time, Plaintiff refused to do so. [Ex. A, 87:3 – 21; Ex. B, Ex. C, pp. 20:23 – 21:13, 22: 14 – 17, 46:5- 8, 47: 4 – 13, 62:2 – 63:13, Ex. E, 34:24 – 36:3, 44:6-21, Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16, Group Ex. I.]

**RESPONSE:** Undisputed.

13. During this second exchange, a group of people exited Plaintiff's home and approached where the traffic stop was being conducted and began gathering behind Officer Meyers. [Ex. A, 53:9 – 21; Ex. B, Ex. C, pp. 21:24 – 22:4, Group Ex. I.]

**RESPONSE:** Disputed. Two family members—a fifteen year old girl and her mother, who was in pajamas—lived in the house connected to the driveway Mr. Gutierrez was parked on, exited the home, approached the scene, and stood to the *side* of Defendant Meyers so Defendants could see them, at a safe distance. The witnesses informed the officers as they approached, and one put her hands up to demonstrate to the officers that they were not a threat. The witnesses stood approximately 10 feet away and moved back in a non-threatening way when instructed. Officer Meyers could see and was aware that the two individuals watching were Plaintiff's family, thought one was his mom initially, and sounded unconcerned with their presence. Defendant McCue did not perceive a threat from these witnesses. *Exhibit 3, C.Y. Video 00:13:00-00:16:00; Exhibit 6, Criminal Trial Transcript Day 2, p. 119:15-20, pp. 120:21-24 - 121:1, p. 144:12-16; Exhibit 5, C.Y. Deposition p. 11:16-24, pp. 12:24-25 – 13:1-4; Exhibit 1, Dashcam 00:10:32-00:10:38; Exhibit 8, McCue Deposition p. 24:20-24.*

7

14. Officer Meyers could not see the group of people clearly and did not know who they were, which also made Officer Meyers concerned for his safety. [Ex. A, 52:23 – 53:21; Ex. B, Ex. C, p. 22:5 -13.]

**RESPONSE:** Disputed. Defendant Meyers had previously seen Juanita and Cynthia Yanez standing in the yard watching the incident and acknowledged that they were family when Mr. Gutierrez stated that it was his sister. Given that the Yanezes were to his side, he could see them clearly. *See* Plaintiff's Response to Defendants' Statement of Facts # 13. The Yanezes were a teenage girl and her mother, who was in her pajamas, and they informed the officers as they calmly approached, and one put her hands up to demonstrate to the officers that they were not a threat. The two witnesses stood approximately 10 feet away and later moved back when instructed. Defendant McCue did not perceive a threat from these witnesses. *Exhibit 1, Dashcam Video 00:10:34-00:10:39; Exhibit 6, Criminal Trial Transcript Day 2, p. 119:18-23, pp. 120:21-24 - 121:1, p. 144:12-16; Exhibit 5, C.Y. Deposition p. 11:16-24, pp. 12:24-25 – 13:1-4; Exhibit 8, McCue Deposition p. 24:20-24.*

15. Plaintiff began yelling at the people behind Officer Meyers and escalated the situation by rolling up his window. [Ex. A, 52:23 – 53:21; Ex. B, Ex. C, pp. 22:18 – 23:4, Ex. E, pp. 52:3 – 55:12, Ex. F, p. 25:15 – 25, Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16, Group Ex. I.]

**RESPONSE:** Disputed. The witnesses were not behind Officer Meyers. *See* Plaintiff's Response to Defendants' Statement of Facts # 13-14. Mr. Gutierrez did not escalate the situation by rolling up his window. Defendant Meyers escalated the situation when he reached into Mr. Gutierrez's

8

vehicle. Further, Plaintiff was not yelling, he had to raise his voice to communicate with his family members that were standing approximately 10 feet away from the scene. *Defendants' Exhibit E, Plaintiff's Deposition p. 52:3-7. Exhibit 3, C.Y. Video 00:28:00-00:32:00*

16. Officer Meyers ordered Plaintiff to stop rolling up the vehicle's window. [Ex. A, 87:3 – 21, Ex. B, Ex. C, p. 23:5-9, 62:2 – 63:13, Ex. E, pp. 52:3 – 55:12, Ex. G, pp. 13:1 – 15:4, Group Ex. I.]

**RESPONSE:** Disputed. Defendant Meyers ordered Mr. Gutierrez to "lower the window down." Plaintiff was not rolling the window up or down at this point of the interaction. Mr. Gutierrez had partially rolled up his window when Defendant Meyers stuck his hand into Plaintiff's car. There was a point in the interaction where the window was not moving while Defendant Meyers' hands were holding the window. *Exhibit 3, C.Y. Video 00:09:00-00:30:00; Defendants' Exhibit E, Plaintiff's Deposition p. 52:18-24, 53:1-20, 59:10-20. Exhibit 2, Defendant Meyers Deposition p. 54:13-20; Exhibit 7, Juanita Yanez Deposition p. 14:5-13.*

17. Plaintiff did not obey Officer Meyer's order. [Ex. A, 87:3 – 21; Ex. B; Ex. C, p. 23: 8 – 9, 62:2 – 63:13, 90:24 - 92:15, Ex. E, pp. 52:3 – 55:12, Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16, Group Ex. I.]

**RESPONSE:** Undisputed to the extent that Plaintiff did not lower the window down as per the letter of Defendant Meyers' command, though to the extent that this Statement of Fact contains

9

the implication that Plaintiff never stopped rolling the window up, which Plaintiff disputes per his Response to Defendants' Statement of Fact # 16, 19.

18. Officer Meyers continued to order Plaintiff to stop rolling up his window and Plaintiff continued to disobey Officer Meyers orders. [Ex. A, 87:3 – 21; Ex. B; Ex. C, p. 23: 8-15, 62:2 – 63:13, 90:24 - 92:15, Ex. E, pp. 52:3 – 55:12. Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16, Group Ex. I.]

**RESPONSE:** Undisputed to the extent that Plaintiff continued to roll his window up after Defendant Meyers' first command, but disputed to the extent that it contains the implication that Plaintiff never stopped rolling his window up per his Response to Defendants' Statement of Fact # 16, 19.

19. Because Plaintiff continued to roll up his window, Officer Meyers put his hands on the vehicle's window and subsequently broke the vehicle's window before his fingers were crushed by the window. [Ex. A, 87:3 – 21; Ex. B; Ex. C, p. 23: 8-15, 62:2 – 63:13, Ex. E, pp. 52:3 – 55:12, 58:1 – 24, Ex. H, pp. 13:1 – 14:16, Group Ex. I.]

**RESPONSE:** Disputed. Mr. Gutierrez's window was approximately three inches away from being fully closed while Defendant Meyers was holding the window; Mr. Gutierrez stopped his attempt to close his window to avoid crushing Defendant Meyers' hands. *Exhibit 3, C.Y. Video 00:00:15-00:00:34; Defendants' Exhibit E, Plaintiff's Deposition p. 59:24, 60:1-18; Exhibit 4, Criminal Trial Transcript Day 1 p. 79:20-21; Exhibit 7, Juanita Yanez Deposition p. 14:5-13.*

10

20. After the window was broken, Officer Meyers again ordered Plaintiff out of the vehicle. [Ex. A, 87:3 – 21; Ex. B; Ex. C, p. 24:8 – 11, 90:24 - 92:15, Group Ex. I.]

**RESPONSE:** Undisputed.

21. Plaintiff again refused to get out of the vehicle. [Ex. A, 87:3 – 21; Ex. B; Ex. C, p. 24: 8- 11, 90:24 - 92:15, Ex. F, p. 27:2 – 23, Ex. G, pp. 13:1 – 15:4, Ex. H, pp. 13:1 – 14:16. Group Ex. I.]

**RESPONSE:** Disputed. As soon as Defendant Meyers broke Mr. Gutierrez's window, Mr. Gutierrez raised his hands in the air in surrender, allowing Defendant Meyers to unlock the car door from the inside. He did not refuse to get out of the car, instead submitting to the Defendants and stating "my hands are right here" as Defendant Meyers unlocked the door. Plaintiff was not attempting to flee, was not threatening the officers, made no attempt to attack the officers, was not resisting the officers, and made no movements towards them. *Exhibit 3, C.Y. Video 00:00:43-00:00:51; Defendants' Exhibit E, Plaintiff's Deposition p. 66:18-24; 67:1-8, Exhibit 2, Meyers Deposition p. 61:19-21; p. 62:1-20. Exhibit 1, Dashcam Video 00:13:29-00:13:36; Exhibit 5, C.Y. Deposition p. 8:4-25; Exhibit 7, Juanita Yanez pp. 8:17-25 – 9:1-18, p. 16:2-12; Exhibit 8, McCue Deposition pp. 31:7-25 – 32:1-22.*

22. Because Plaintiff again refused to get out of the vehicle, Officer Meyers unlocked the vehicle's driver's side door and he and Officer McCue overcame Plaintiff's resistance by forcibly removing Plaintiff from the vehicle. [Ex. A, 63:6 – 7, 70:6-10, 83:1-2; Ex. C, pp. 24:8 – 25:16, 53:11 – 19, Ex. E, pp. 68:18 – 69:23, Ex. F, 33:25 – 34:1, 62:17 – 63:1, Ex. H, pp. 13:1 – 14:16 Group Ex. I.]

11

**RESPONSE:** Disputed. Plaintiff did not refuse to get out of the vehicle and was not resisting. He was not fleeing, and he made no movements towards the Defendants or away from the Defendants. Mr. Gutierrez's hands were up in the air, palms facing forward, in surrender. He allowed Defendant Meyers and McCue to unlock the door and remove him from the vehicle, even informing them where his hands were (raised in surrender) to prevent harm to himself and facilitate an easier arrest. Mr. Gutierrez did not resist being removed from the car in any way. *Exhibit 6, Criminal Trial Transcript Day 2 p. 147:17-19; Exhibit 3, C.Y. Video 00;43:00-00:51:00; Exhibit 2, Meyers Deposition p. 61:19-21; p. 62:1-20; Exhibit 5, C.Y. Deposition p. 8:4-25; Exhibit 7, Juanita Yanez Deposition pp. 8:17-25 – 9:1-18, p. 16:2-11; Defendants' Exhibit E, Plaintiff's Deposition p. 67:3-6; Exhibit 8, McCue Deposition pp. 31:7-25, p. 32:1-25, p. 33:1-6, pp. 33:18-25 – 34:1, p. 40:18-25, p. 41:1-2.*

23. In order to gain control of Plaintiff for handcuffing, the Officers pushed Plaintiff against the van parked next to Plaintiff's vehicle. [Ex. A, 63:6 – 7, 70:6-10, 83:1-2; Ex. C, pp. 24:8– 25:16, 53:11 – 19, Ex. E, pp. 68:18 – 69:23, Ex. F, 33:25 – 34:1, 62:17 – 63:1, Ex. H, pp. 13:1 – 14:16 Group Ex. I.]

**RESPONSE:** Disputed. Defendant Meyers and McCue had full control of the arrest at this point, as Mr. Gutierrez was not resisting. Rather than removing Mr. Gutierrez from the vehicle and handcuffing him on his own vehicle, Defendants Meyer and McCue flung Mr. Gutierrez onto the van parked in the driveway, together slamming his head into the side of the van, with Defendant McCue placing a hand deliberately on Plaintiff's head and throwing it into the van. *Exhibit 6,*

12

*Criminal Trial Transcript Day 2 p. 147:17-19; Exhibit 1, Dashcam 00:13:38-00:13:42; Exhibit 3, C.Y. Video 00:00:51 -00:00:55, Defendants' Exhibit E, Plaintiff's Deposition p. 68:17-24, p. 69:1-9, p. 67:3-6; Exhibit 2, Meyers Deposition p. 68:4-15; Exhibit 5, C.Y. Deposition p. 8:4-25; Exhibit 7, Juanita Yanez Deposition pp. 8:17-25 – 9:1-18, p. 16:2-11; Exhibit 8, McCue Deposition p. 40:18-25, 41:1-2.*

24. This also allowed Officer Meyers to see the group of people that had gathered behind him in his peripheral vision. Ex. A, 63:6 – 7, 70:6-10, 83:1-2; Ex. C, pp. 24:8 – 25:16, 53:11 – 19, Ex. E, pp. 68:18 – 69:23, Ex. F, 33:25 – 34:1, 62:17 – 63:1, Ex. H, pp. 13:1 – 14:16 Group Ex. I.]

**RESPONSE:** Disputed. The "group of people" was not behind him. *See* Plaintiff's Response to Defendants' Statement of Facts # 13, 14. Further, Defendant Meyers was able to see the two people recording the incident once again as he handcuffed Mr. Gutierrez. *Exhibit 3, C.Y. Video 00:55:00-00:58:00.*

25. Removing Plaintiff from the vehicle and pushing him against the van to handcuff him happened very quickly—within approximately two seconds. [Ex. A, 58:2 – 5, Ex. E, 69. 10 – 12, Group Ex. I.]

**RESPONSE:** Disputed. The endeavor took at least 17 seconds. Plaintiff raised his arms in compliance and surrender as soon as officers broke the window, and officers removed him from the vehicle without any resistance before slamming him into the van. Also disputed as to the manner in which Plaintiff was removed from the vehicle. Defendant Meyers and McCue flung Mr.

13

Gutierrez into the neighboring vehicle and slammed his head into the window. *Exhibit 1, Dashcam 00:13:38-00:13:42; Exhibit 3, C.Y. Video 00:00:36-00:00:55, Defendants' Exhibit E, Plaintiff's Deposition p. 68:17-24; p. 69:1-9; Exhibit 2, Meyers Deposition p. 68:4-15.*

26. Plaintiff bumped the right side of his forehead on the van window. [Ex. A, 71:14-15; Ex. C, p. 25:17-19, Ex. E, 69:16-23, 72:19 – 22, Group Ex. I.]

**RESPONSE:** Disputed. Defendants McCue and Meyers slammed Mr. Gutierrez's head into the van's window with enough force to give him a concussion. Mr. Gutierrez did not throw his own head against the van as implied by this statement. *Exhibit 1, Dashcam 00:13:38-00:13:42; Exhibit 3, C.Y. Video 00:00:51:00-00:00:55, Defendants' Exhibit E, Plaintiff's Deposition p. 68:17-24; p. 69:1-9; Exhibit 2, Meyers Deposition p. 68:4-15; Exhibit 9, Diagnosis of Treating Physician Jose Trevino; Exhibit 10, Declaration of George Gutierrez, ¶ 4.*

27. Neither Officer Meyers nor Officer McCue pushed Plaintiff's head into the van's window. [Ex. C, pp. 53:24 – 54:4.]

**RESPONSE:** Disputed. Defendant Meyers and McCue slammed Mr. Gutierrez's head into the van's window with force. In fact, Defendant Meyers testified at trial that Defendant McCue "had his hand up on [Plaintiff's] head" and "I don't recall exactly how [Plaintiff's] head hit the window." Defendant McCue testified that his hand was on the back of Plaintiff's head and that they pushed him up against the van. Mr. Gutierrez did not throw his own head against the van as implied by Defendants' statement. A large welt can be seen on the right side of Mr. Gutierrez's

14

head as he is searched in front of Defendant Meyers' vehicle. *Exhibit 1, Dashcam 00:13:38-00:14:15; Exhibit 3, C.Y. Video 00:00:51-00:01:27, Defendants' Exhibit E, Plaintiff's Deposition pp. 68:17-24 - 69:1-9; Exhibit 2, Meyers Deposition p. 68:4-15; Exhibit 4, Criminal Trial Transcript Day 1 pp. 53:24 – 54:1-4; Exhibit 8, McCue Deposition pp. 33:18-25 – 34:1.*

28. Plaintiff was offered medical attention but refused it. [Ex. B, Ex. C, p. 20 – 24, Ex. E, p. 137:8-13.]

**RESPONSE:** Undisputed.

29. Plaintiff's nervous behavior, Officer Meyers' inability to see clearly through the tinted windows and Plaintiff's continued refusal to obey Officer Meyers' orders to step out of the car, in addition to the group of people forming behind him whom he did not know, caused Officer Meyers to fear for his safety. [Ex. A, p. 73:21-25, 87:3 – 21; Ex. B; Ex. C, pp. 34:24 – 35:22.]

**RESPONSE:** Disputed. Mr. Gutierrez was not nervous, Defendant Meyers could see through the tinted windows, Plaintiff did not continue to refuse orders to step out of the car, and the "group" of people was not behind Defendant Meyers, but to his side, and further was a 15 year old girl and her mother in pajamas. See Plaintiff's Response to Defendants' Statement of Facts # 2, 7-9, 13-15, 21-24, 34.

**Charges and Conviction**

30. Plaintiff was charged with failure to display a turn signal within one hundred feet of an intersection, having illegal tint on his windows, and obstruction of a police officer. [January 4, 2022 Trial Transcript, attached hereto as Exhibit D, pp. 153:11 – 154:3.

**RESPONSE:** Undisputed.

31. A bench trial on Plaintiff's charges was held in the criminal courts of Kane County Illinois. [See generally Exs. C & D.]

**RESPONSE:** Undisputed.

32. Plaintiff was found guilty on all counts. [Ex. D, pp. 154:4 – 160:20, Ex. E, 8:4-7]

**RESPONSE:** Undisputed.

33. The criminal court found that Plaintiff had illegally signaled to turn within a hundred feet of an intersection and Officer Meyers had a lawful reason to pull Plaintiff over. [Ex. D, pp. 154:4 – 155:6, Ex. E, p. 11:18 – 24.]

**RESPONSE:** Undisputed.

34. In addition, the criminal court found that Officer Meyers, after running Plaintiff's background, was equipped with additional information regarding Plaintiff, gave Plaintiff several lawful orders

to step out of the vehicle and because Plaintiff repeatedly refused to do so, Officer Meyers had a legitimate reason to fear for his safety. Thus, Plaintiff was found guilty of obstructing a police officer. [Ex. D, pp. 155:17 – 160:20, Ex. E, p. 11:18 – 24.]

**RESPONSE:** Disputed to the extent that the criminal court made no finding as to whether Defendant Meyers had a legitimate reason to fear for his safety at the point of Mr. Gutierrez's surrender. The criminal court, in its analysis of this case, compared to *People v. Mims*, determining that Defendant Meyers feared for his safety and giving him, in the court's opinion, the legal authority to order Plaintiff out of his car. The criminal court, however, did not determine whether Defendant Meyers had a legitimate reason to fear for his safety following Mr. Gutierrez's surrender as its analysis was solely in reference to the misdemeanor offense of obstructing a police officer and *not* the use of force by Defendants Meyers and McCue at issue in this civil matter. *Exhibit 6, Criminal Trial Transcript Day 2 p 157:19-24, 158:1-24, 159:1-24, 160:1-19.* .

35. Plaintiff's criminal appeal, No. 2-22-1050, was dismissed on August 8, 2022. Plaintiff has not moved the Illinois Second District Appellate Court to vacate the dismissal and does not intend to do so. [DKT. No. 34.]

**RESPONSE:** Undisputed.

Respectfully submitted,

/s/Daniel E. Massoglia
*One of Plaintiff's Attorneys*

Daniel Massoglia
Ashley Rodriguez

17

Dan Lastres
Joseph DiCola
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708 797 3066
E: daniel@first-defense.org
E: ashley@first-defense.org
E: lastres@first-defense.org
E: joseph@first-defense.org
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Daniel Massoglia, an attorney, hereby certify that a copy of this document was filed on March 1, 2023 using the CM/ECF system, which generates electronic notice to all parties of record.

Respectfully submitted,

/s/ Daniel E. Massoglia

*One of Plaintiff's Attorneys*