**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE GUTIERREZ, ) | |
| Plaintiff, ) | |
| v. ) | No. 21 CV 2211 |
| ) | |
| CITY OF AURORA, AURORA POLICE ) | Hon. Judge Jeremy C. Daniel |
| OFFICERS MATTHEW THOMAS ) | |
| MEYERS and C. McCUE, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTIONS *IN LIMINE*

Plaintiff has two claims with essentially the same elements to try before the jury – excessive force and battery. Thus, he has to prove the officers used more force than was reasonably necessary when they yanked him from his car and slammed his head into a nearby vehicle causing significant swelling and a concussion. This use of force came after Plaintiff was pulled over for failure to signal 100 yards before turning (the criminal trial court found he signaled 82 feet before turning) and after he did not exit his vehicle as ordered because he was afraid of what the officers would do to him if he did. The case is straightforward, and Plaintiff seeks to keep the evidence before the jury straightforward as well. Plaintiff anticipates Defendants will seek to introduce irrelevant evidence regarding his ancient criminal history and gang membership to impermissibly prejudice the jury against Plaintiff. Defendants also oppose Plaintiff's motions to bar the Defendants from offering testimony and opinions on whether their own actions were reasonable and about other police procedure and seeking to bolster their testimony and credibility by referencing awards, commendations and wearing police uniforms, badges and/or medals. The parties should be on an even playing field before the jury and Plaintiff's motions in limine ask the Court to ensure that they are.

**Plaintiff's Motion *in Limine* #1: To bar all evidence, testimony, and arguments regarding Plaintiff's prior convictions or arrests.**

Plaintiff moves, pursuant to Fed. R. Evid. 401, 403, 404(b) and 609(b)(1) to bar evidence, testimony, and arguments regarding Plaintiff's past convictions and arrests. During the stop, Defendants ran Mr. Gutierrez's identification and learned he was on the violent offender registry (for a 30-year old murder conviction) and that he was listed in Aurora Police Department's gang membership database based on historical information.

Mr. Gutierrez's 1994 murder conviction should be excluded subject to Fed. R. Evid. 401 and 403. The evidence of Mr. Gutierrez's 30-year old conviction and the department's classification of him as a former gang member are not relevant to Plaintiff's claims. See, for example, *McCoy v. Mennerich*, 584 F. Supp. 3d 635, 639 (S.D. Ill. 2022) (details of an old conviction were not relevant for Eighth Amendment excessive force complaint). The former conviction and gang membership are highly prejudicial. "Evidence is unfairly prejudicial in the context of Rule 403 if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Common v. City of Chicago*, 661 F.3d 940, 947 (7th Cir. 2011) (quotations omitted). "[A] district court, in exercising its discretion under Rule 403, must carefully analyze and assess the prejudicial effect of challenged evidence." *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011).

Here, the irrelevant conviction and gang membership are being introduced for the purpose and with the likely effect of prejudicing the jury against Mr. Gutierrez. To the extent there is any probative value in this category of evidence, the probative value of Mr. Gutierrez's 30-year-old murder conviction is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

The officers testified in their depositions that this type of information does not justify prolonging a traffic stop. There was no reason to believe that Mr. Gutierrez was involved in any

conduct related to this criminal history when he was stopped for failing to signal 100 feet prior to turning. There are no allegations that Mr. Gutierrez was engaged in any violent crimes or gang-related activity at the time of the stop. Yet, Defendants are expected to argue that this information was somehow relevant to their use of force when Mr. Gutierrez would not exit his vehicle. Their own testimony contradicts that – they extracted him from his vehicle based on his actions during the stop, not his decades-old criminal history.

On numerous occasions, the Seventh Circuit has cautioned that "[p]resenting a [section] 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013); *see also Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) (courts must be "careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him"); *Jones v. Sheahan*, 2003 WL 21654279, at *2 (N.D. Ill. 2003) (evidence of the plaintiff's murder conviction might lead a jury to deny him an award "not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question") (quoting *Earl v. Denny's, Inc.*, 2002 WL 31819021, at *3 (N.D. Ill. 2002)).

Federal Rule of Evidence 404(b)(1) also warrants exclusion of prior convictions. The Rule outlines that prior convictions are inadmissible character evidence if offered to show that on a particular occasion the person acted in accordance with the character suggested by the evidence. Fed. R. Evid. 404(b)(1). The conviction should further be excluded for this reason.

This evidence should also be excluded under Fed. R. Evid. 609(b), which prohibits evidence of a conviction if more than ten years have passed since the time of conviction or release from confinement *unless* its probative value substantially outweighs its prejudicial effect. Fed. R.

Evid. 609(b)(1). Here, the prejudicial effect clearly outweighs any probative value. The Seventh Circuit has repeatedly ruled that such evidence should only be admitted "very rarely and only in exceptional circumstances." *United States v. Fallon*, 348 F.3d 248, 254 (7th Cir. 2003); *see also United States v. Carr*, 695 F. App'x 953, 956 (7th Cir. 2017) ("[I]mpeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances.") It is exceptional for a conviction as outdated as the one here to be presented to a jury at all.

Plaintiff maintains that this evidence has no probative value and is obviously severely prejudicial. Defendants may argue that prejudice can be cured by sanitizing the nature of the conviction or giving a limiting instruction. While limiting how a conviction is referred to is permitted, in this case, it still creates undue prejudice given the lack of relevance in the context of a traffic stop for a minor moving violation. The Seventh Circuit has held that such "sanitization" of prior criminal convictions is permitted, including concealing the nature or name of the crime. *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009) (Citing *United States v. Stokes,* 211 F.3d 1039, 1042–43 (7th Cir.2000); *United States. v. Hursh,* 217 F.3d 761, 768 (9th Cir.2000); *United States. v. Clark,* 184 F.3d 858, 867 (D.C.Cir.1999)). Courts have been given latitude to exclude terms such as "felon" and "felony" as well as the details of the crime. Instead, terms such as "a crime punishable by a term of imprisonment of more than one year" have been substituted for any description of the underlying offense. *United States v. Stokes,* 211 F.3d 1039, 1042–43 (7th Cir.2000).

Even if the Court were to allow the evidence and order that it be restricted to describing Mr. Gutierrez as having been convicted of a crime punishable by a term of imprisonment of more than one year, the cumulative effect of the criminal background evidence will still cloud the jury's

4

consideration of Plaintiff's claims. At trial, the jury will be tasked with determining if the officers' force, in grabbing Plaintiff from his vehicle and slamming his head into a van, was reasonable. If Defendants are permitted to introduce Plaintiff's background in the form of a felony conviction, gang membership and violent offender registry, the risk of jury nullification is high and not curable by other measures.

**Plaintiff's Motion *in Limine* #2: Motion to exclude all evidence, testimony, and arguments that Defendants thought Plaintiff was a "gang member" or on a "murder registry."**

During the traffic stop, Defendant Officer McCue ran Mr. Gutierrez's identification and received information about Mr. Gutierrez's criminal background and Aurora Police Department's designation that Mr. Gutierrez was a member of a gang. In addition to being based on outdated information from Mr. Gutierrez's youth and highly prejudicial (FRE 403), the gang membership is not substantiated by any objective evidence and is inadmissible hearsay under Federal Rule of Evidence 802.

Evidence and testimony regarding information that Plaintiff was a "gang member" or on a "murder registry" should be excluded. The Seventh Circuit has frequently recognized the dangers of admitting evidence of gang membership. *See United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) ("evidence of membership in a street gang is likely to be 'damaging to [a defendant] in the eyes of the jury'" (citation omitted)); *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990) (recognizing that gangs have a very negative image and poor public relations).

Plaintiff's documentation as a gang member is thirty years old, as Plaintiff has not been an active street gang member for close to three decades. According to the Illinois Streetgang Terrorism Omnibus Prevention Act, a gang member is someone who "actually and in fact belongs to a gang." 740 ILCS 147/10. Plaintiff does not meet this definition as he does

not belong to a gang and has not for decades. Additionally, records of Plaintiff's gang membership were never produced in discovery despite being responsive to Plaintiff's discovery requests. Defendants cannot identify any activities Plaintiff engaged in on the date of the incident or during the traffic stop that consisted of gang activity, indicated gang membership, or involved a murder investigation or violent crime investigation of any sort. Plaintiff was not arrested for any gang-related crimes—he was charged with minor traffic violations and with obstructing a peace officer during the traffic stop based on his unwillingness to exit his vehicle.

It would be unduly prejudicial to permit Defendants to testify as to their belief that Plaintiff was a member of a gang or about his presence on a "murder registry" based upon unsubstantiated information which is nearly thirty years old. The danger is clear that this information will be used to imply, without any basis, that plaintiff was committing a gang-related crime on the date of the incident, or is an inherently violent person, and this somehow justified Defendants' behavior towards him; or to prejudice the jury against returning a verdict in Plaintiff's favor entirely. *See United States v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996) ("Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict"). This kind of inference could influence the jury to make an emotional instead of factual decision. *See Barber v. City of Chicago*, 725 F.3d 702, 704 (7th Cir. 2013).

For this reason, courts routinely exclude evidence of gang affiliation at trial. *See, e.g.*, *Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *3 (N.D. Ill. Apr. 5, 2018)

(granting plaintiff's motion to bar any evidence of plaintiff's past membership or affiliation with a gang because "the probative value of such evidence is substantially outweighed by a danger of unfair prejudice"); *Case v. Town of Cicero*, 2013 WL 5645780, at *5 (N.D. Ill. Oct. 16, 2013) (excluding gang-related evidence because "evidence of. . . affiliation with a gang is highly prejudicial, especially when the gang evidence is not relevant to a central issue in a case" (citation omitted)). Such testimony would constitute propensity evidence and would not fall under the admissible exceptions to Rule 404.

It would be even more unfairly prejudicial to permit Defendants to testify about Plaintiff's presence on a "murder registry" based upon a conviction for a crime that occurred three decades ago. A gang registry suggests that an individual is involved in a group which may engage in criminal activity; the association is theoretical, and therefore speculative. Presence on a "murder registry" creates an unfairly prejudicial connection to a specific and violent crime that occurred in the past. If gangs "generally arouse negative connotations," *United States v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996), a murder or violent offender registry would do so to an even higher degree. This connection has a high possibility of improperly influencing a jury's verdict. Moreover, inclusion of Plaintiff's presence on a murder registry is a means by which Defendant can circumvent the Rule 609(b) and Rule 404(b) bars on the admission of past convictions into evidence, particularly those over ten years old as described above in Plaintiff's Motion *in Limine* #1.

Furthermore, Aurora officers should be barred from testifying that they have worked or are working in a gang unit. This case has nothing to do with gang activity, as Defendants have already testified. Courts have barred officers in non-gang-related cases from mentioning that they are in a gang unit because any reference to gang activity may inflame the jury. *Jones*

7

*v. City of Chicago*, 2017 WL 413613, at *12 (citing cases).

**Plaintiff's Motion *in Limine* #6**: **Motion to exclude all evidence, testimony, and arguments indicating that Plaintiff was charged with resisting arrest.**

Resisting arrest and obstructing a peace officer are two distinct crimes, *People v. Baskerville*, 2012 IL 111056 ¶ ¶ 16-29, and Mr. Gutierrez was charged with only one of them: obstructing a peace officer. The Illinois Supreme Court in *Baskerville* described the elements of each, highlighting their differences. Notably, the Court stated: "This interpretation is also consistent with our obligation to avoid a construction which renders a part of the statute superfluous or redundant, and instead presume that each part of the statute has meaning." *Id.* at ¶ 25. This clarification in the case law regarding the differences in the two crimes has been codified in the updates to 720 ILCS 5/31-1 which took effect on January 1, 2023. This change clearly separates the crimes as (1) resisting arrest, and (2) obstructing the performance by one known to the person to be a peace officer of any authorized act within his or her official capacity. 720 ILCS 5/31-1. In differentiating the two offenses, the Illinois Supreme Court held that "obstructing a peace officer under section 31–1(a) ... does not necessitate proof of a physical act" *Baskerville*, 2012 IL 111056 ¶ 29. The court further explained that "'resist' implies some type of physical exertion in relation to the officer's actions," *id.* at ¶ 23, but, "[a]lthough a person may commit *obstruction* of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an *obstruction.*" *Id.* (emphases added).

Here, Plaintiff was charged and convicted with obstructing a peace officer for passive noncompliance, i.e. not exiting his vehicle. While the statute at the time of Plaintiff's criminal trial called the crime "resisting or obstructing," the Aurora Police Department incident report and trial transcript demonstrates that Plaintiff was prosecuted and convicted for obstructing a peace officer passively. Trial Transcript at 160, *People v. Gutierrez*, 20 CM 961, cited excerpts attached as

Exhibit A. *See also* ("[T]his isn't a sudden movement resisting case. This is, again, a legal command to step out of a vehicle being refused.") *Id.* at 152. Defendants should therefore be barred from characterizing Plaintiff's actions as resisting a peace officer because it would be inaccurate and run afoul of Rule 403. Rule 403 states that a court may exclude evidence if its probative value is substantially outweighed by a danger of misleading the jury. Fed. R. Evid. 403. Mr. Gutierrez was never charged with or convicted of resisting an officer. The Defendant officers alleged, and the criminal court found, that Mr. Gutierrez obstructed a peace officer. Any assertion or implication through evidence or argument that Mr. Gutierrez was charged or convicted with resisting arrest would be incredibly misleading to the jury and potentially foreclose a verdict in his favor by exploiting the criminal case outcome.

**Plaintiff's Motion *in Limine* #11: Motion to bar comment or argument referencing attorneys interviewing or meeting with witnesses.**

Plaintiff's attorneys may interview witnesses to the events that are the subject of this litigation in preparation for trial. These interviews are permissible: Seventh Circuit Pattern Jury Instruction No. 1.16 explicitly states that it is "proper for a lawyer to meet with any witness in preparation for trial." Any suggestion or implication that Plaintiffs' counsel acted improperly by conducting, or during, these interviews should be excluded from evidence. *See* Fed. R. Evid. 403.

**Plaintiff's Motion *in Limine* #13: Motion to bar improper bolstering of defendants and police officer witnesses with evidence, testimony, or argument regarding awards or commendations, or by wearing police uniforms, medals and badges.**

Plaintiff moves, pursuant to Fed. R. Evid. 401, 402, 403, 404, and 802, to bar attempted bolstering by Defendants with testimony of awards and commendations, or by wearing special police uniforms or medals and badges. Such testimony and physical presentation are inadmissible hearsay and improper bolstering and should be excluded. Fed. R. Evid. 802.

9

Defendants' commendations are irrelevant and not probative of Plaintiff's liability, damages, or any defenses. Fed. R. Evid. 402.

Testimony regarding awards and commendations constitutes character evidence, which is generally inadmissible pursuant to Fed. R. Evid. 404(a). The court in *Charles v. Cotter*, 867 F. Supp. 648 (N.D. Ill. 1994), noted its belief that such commendations "…could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question." *Id.* at 659, *n 6. Unlike proper Fed. R. Evid. 404(b) evidence, this evidence does not go to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*; *see also Graham v. Bennett*, No. 04 CV 2136, 2007 WL 781763, *3 (C.D. Ill.). ("Evidence of prior commendations could serve the improper function of providing evidence of action in conformity with Defendant's prior good performance on the police force").

Police officers wearing their medals and badges in court would amount to improper character evidence and bolstering of police credibility. *See United States v. Bonner*, 302 F.3d 776, 780 (7th Cir. 2002) (challenging practice of witness bolstering as attempt to enhance credibility). The risk that jurors will be inclined to credit the testimony of police officers due to their official status is recognized by courts and should be excluded to guard against unfair prejudice. *See Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir. 1985) (citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)) ("civil rights actions often pit unsympathetic plaintiffs...against the guardians of the community's safety, yet serve an essential deterrent function…"). Special police uniforms, badges, and medals attempt to signal that the police witnesses should be regarded as especially credible, reliable, and honorable. This type of character evidence is improper and should be barred.

Character evidence in the form of past commendations or honors of the Defendant Officers is unrelated and irrelevant to Plaintiff's claims. Such evidence does not bear upon the issue of force used by Defendant Officers that will be before the jury. It is self-serving and catered to cast Defendants in a favorable light. Indeed, character evidence is normally inadmissible in a civil rights case. *See Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993); Fed. R. Evid. 404. Lastly, evidence of commendations and awards constitutes inadmissible hearsay and comes under none of the exceptions of the federal rules. *See* Fed. R. Evid. 801-804; *United States v. Nazzaro,* 889 F.2d 1158, 1168 (1st Cir. 1989); *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997); *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987). Hence, it must be excluded from trial.

Plaintiff asks the Court to issue an order barring improper bolstering of Defendants through testimony as to awards or commendations and by wearing special police uniforms or medals and badges to the trial.

**Plaintiff's Motion *in Limine* #20: Motion to bar Defendants and city employees from offering opinion testimony, 30(b)(6) testimony, or legal conclusions, including any opinion testimony from any police officer or other witness, including the Defendants, that the actions of Defendants and their use of force were reasonable.**

Plaintiff moves this court to bar Defendants and city employees from offering opinion testimony, 30(b)(6) testimony, or legal conclusions, generally, pursuant to Federal Rules of Evidence 701, 401 and 403. Plaintiff specifically moves that Defendants be barred from introducing opinion testimony that the use of force by Defendant Officers was reasonable given the facts of this case. This line of testimony is an improper lay opinion that invades the province of the jury as fact finder. *United States v. Noel*, 581 F.3d 490, 496-97 (7th Cir. 2009); *United States v. Jones*, 56 F.4th 455, 490 (7th Cir. 2022); *United States v. Wantuch*, 525 F.3d 505, 514 (7th Cir.

11

2008); *U.S. v. Hauert*, 40 F.3d 197, 201 (7th Cir. 1994) (noting that opinion testimony on a party's knowledge of the law will generally not meet the requirements of Rule 701).

This type of opinion testimony fails to satisfy the requirements of Fed. R. Evid. 701. Rule 701 permits non-expert, lay opinion evidence when the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Any lay witness opinion testimony in the present case would not satisfy these requirements because it would: (1) come from a witness that would have an imprimatur of authority, thereby exacerbating the prejudicial effect; (2) involve a subject matter on which the Court would be instructing the jury, thereby potentially misleading the jury; and (3) involve specialized knowledge of the law. Such testimony should be excluded under Federal Rule of Evidence 403 because its admission would create significant unfair prejudice and offer little probative value.

Furthermore, because Defendants have not disclosed any experts in discovery, Federal Rule of Evidence 701 controls the admissibility of opinion testimony by lay witnesses. Parties are prevented from "proffering an expert in lay witness clothing." *Compania Administradora v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir.2008). Plaintiff seeks an order to ensure that Defendants do not cross this line by referencing their experience as police officers to offer what are functionally expert opinions about policing, Mr. Gutierrez, or any other aspect of the traffic stop and use of force.

For all these reasons, pursuant to Rule 410, 403 and 701, Plaintiff moves this court to bar Defendants from offering legal conclusions as to their actions on the night in question, including but not limited to whether the force was lawful and reasonable, and any other legal conclusions.

As noted, Defendants have disclosed no experts, and "[l]ay legal conclusions are inadmissible as evidence.") *CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Associates*, 411 B.R. 591, 604 (N.D. Ill. 2009) (quoting *Christiansen v. Nat'l Savings and Trust Co.*, 683 F.2d 520, 529 (D.C.Cir.1982)). Defendants may, for example, proffer testimony about the results of an Aurora Use of Force investigation into the incident to indicate that the force was lawful, or may similarly make representations about what the Fourth Amendment does and does not permit, whether the officers' actions were reasonable, whether they were willful and wanton, or a host of other legal judgments. These statements should be barred not only because they embrace the jury's ultimate finding and therefore have the potential to dictate the jury's verdict when stated by an officer cloaked with implicit legal authority, but also because they are impermissible lay legal conclusions. *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016) (expert testimony that "Defendants' conduct was consistent with 'legal mandates' is not only outcome determinative as related to [plaintiff's] constitutional claims, but these legal conclusions have the real potential of confusing or misleading the jury.")

**Plaintiff's Motion *in Limine* #21: Motion to bar active participation by Defendants and defense counsel in courtroom demonstrations, and precautionary measures required before courtroom demonstrations are enacted before the jury.**

Plaintiff requests that defense counsel and Defendants be barred from performing in-court demonstrations where defense counsel performs a role, especially scenarios where Defendants are performing alongside counsel. Plaintiff objects that it is impossible to lay an appropriate foundation such that Defendants can provide any assurances about the accuracy of the demonstration. Any courtroom demonstration will differ vastly from what happened in the incident addressed by this lawsuit due to the location, setting, time of day, and perspective of the

13

witnesses, among other factors. Plaintiff objects to the representational accuracy of in-court demonstrations pursuant to Fed. R. Evid. 401 and 403.

Courtroom demonstrations mislead the jury because juries struggle to differentiate when defense counsel is portraying a witness in a demonstration as opposed to advocating for their client as counsel. *See U.S. v. Johnston*, 690 F.2d 638 (7th Cir. 1982). Counsel should not appear as both advocate and witness barring special circumstances. *See U.S. v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983). Forbidding counsel to appear as a witness (1) eliminates the risk that counsel will not be an objective witness; (2) reduces the risk that counsel might confuse the trier of fact about whether they are speaking in their capacity as advocate or witness; and (3) improves confidence in the administration of justice. *See Johnston*, 690 F.2d at 643. These same issues are present when an attorney acts in an in-court demonstration, effectively testifying in support of Defendants' version of events.

Furthermore, defense counsel in courtroom demonstrations rarely pose questions, allowing plaintiff's counsel limited or no opportunity to object until defense counsel has already performed prejudicial actions and movements. Courtroom demonstrations by defense counsel thus serve as an unfairly prejudicial means to mislead the jury towards Defendants' version of the facts. Reenactments are substantially more prejudicial than demonstrative exhibits, which are two-dimensional and generally limited to specific details of an incident, because they profess to demonstrate complete events in three dimensions and to accurately recreate the scene and events that transpired. Moreover, these demonstrations are cumulative evidence which will have already been proffered through defense witnesses' testimony and video evidence that captured the actual events underlying Plaintiff's claims.

                                          Respectfully submitted,

                                          *s/Amanda S. Yarusso*

Daniel Massoglia
Hannah C. Marion
First Defense Legal Aid
601 S. California Avenue
Chicago, IL 60612
336-575-6968
daniel@first-defense.org
hannah@first-defense.org

Amanda Yarusso
1180 N. Milwaukee Ave
Chicago, IL 60642
773-510-6198
amanda.yarusso@gmail.com

15