**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE GUTIERREZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO.: 1:21-cv-02211 |
| ) | |
| COREY McCUE, et al. ) | Honorable Jeremy C. Daniel |
| ) | |
| Defendants. ) | |

**DEFENDANTS' RULES 50(b) & 59(a) & (e) MOTION**

NOW COME Defendants, by and through their attorneys, MICHAEL E. KUJAWA and DEBORAH A. OSTVIG of SCHAIN, BANKS, KENNY & SCHWARTZ, LTD., and pursuant to Federal Rules of Civil Procedure 50(b) and 59(a) & (e), request that this Court enter an order for judgment as a matter of law or, in the alternative, enter an order for a new trial or to alter or amend judgment, and state as follows:

**INTRODUCTION**

Officer McCue had to forcibly remove Plaintiff from his car because, even after being ordered to do so at least 13 times, he refused to exit his car of his own accord. Officer McCue's use of force in those circumstances was reasonable and thereby passes scrutiny under both a Fourth Amendment and a qualified immunity analysis, requiring a reversal of the jury's verdict in Plaintiff's favor. As such, this Court should grant Defendants' Rule 50(b) motion for judgment as a matter of law.

Additionally, this Court erred when it did not allow Defendants to cross-examine Plaintiff regarding his release date from prison which prejudiced Defendants at trial. Lastly, damages assessed against Officer McCue are excessive as the evidence presented at trial neither supports the finding of $50,000 in compensatory damages nor $1 million in punitive damages. Moreover,

the punitive damages, which are 20 times the compensatory damages assessed against Officer McCue, violate his due process rights. Thus, this Court, pursuant to Rule 59(a) & (e) should either order a new trial or remit the punitive damages against Officer McCue.

## RELEVANT EVIDENCE PRESENTED AT TRIAL

The Defendants hereby reference and incorporate all testimony and other evidence submitted to the jury during the case, attached hereto as Exhibit A and Group Exhibit B as though fully set forth herein, and briefly summarize the pertinent facts as follows:

On April 26, 2020, Officer Meyers pulled Plaintiff over for failure to display a turn signal within one hundred feet of an intersection. [Ex. A, pp. 190:20 – 197:9 and JX 1 of Group Ex. B.] After making contact with Plaintiff, Officer Meyers ran Plaintiff's driver's license. [Ex. A, pp. 217:1 – 21, 220:4-25 and JX 1 of Group Ex. B.] While Officer Meyers was in his squad car running Plaintiff's license, Officer McCue came on the scene. [Ex. A, p. 221:1 - 21 and JX 1 of Group Ex. B.]

The Officers observed the vehicles tinted windows, which were in violation of the Illinois Vehicle Code, and obstructed the Officers' view into Plaintiff's vehicle. [Ex. A, pp. 261:11 – 19, 264:10 – 266:4 and JX 1 – JX 2 of Group Ex. B.] Upon reapproach, Officer Meyers asked Plaintiff to step out of his vehicle. [Ex. A, pp. 224:18 – 246:17 and JX 1 – JX 2 of Group Ex. B.] Plaintiff refused to exit his vehicle. [Ex. A, pp. 224:18 – 246:17 and JX 1 – JX 2 of Group Ex. B.] For approximately eight minutes, Officer Meyers, using various de-escalation techniques, ordered Plaintiff approximately thirteen times to step out of his vehicle and, each time, Plaintiff refused to do so. [Ex. A, pp. 224:18 – 246:17, 257:8 – 16, 260:3 – 261:10, 270:23-15, 318:23 – 320:5, 321:2 – 324:24, 370:23 – 371:6, 375:11 – 14, and JX 1 – JX 2 of Group Ex. B.]

During Officer Meyers' second exchange with Plaintiff, people gathered behind Officer

Meyers, which escalated the situation. [Ex. A, pp. 236:24 – 238:7, 257:17 – 258:8, 271:10 - 16 and JX 1 – JX 2 of Group Ex. B.] Plaintiff began yelling at the people behind Officer Meyers and escalated the situation by rolling up the vehicle's window. [Ex. A, pp. 224:18 – 246:17, 320:11 – 321:1 and JX 1 – JX 2 of Group Ex. B.] Officer Meyers ordered Plaintiff to stop rolling up his window, but Plaintiff did not obey Officer Meyers' order. [Ex. A, pp. 224:18 – 246:17, 268:8 – 269:13, 321:2 – 324:24, 375:15 – 22, and JX 1 – JX 2 of Group Ex. B.] Officer Meyers ordered Plaintiff approximately eight times to stop rolling up his window, but Plaintiff continued to disobey Officer Meyers' orders, including telling Officer Meyers he would not obey his orders. [Id.] Because Plaintiff continued to roll up his window, Officer Meyers put his hands on the vehicle's window and subsequently broke the vehicle's window before his fingers were crushed by the closing window. [Ex. A, pp. 224:18 – 246:17, 268:8 – 269:13, 270:10 – 17, 321:2 – 324:24 and JX 1 – JX 2 of Group Ex. B.]

After the window was broken, Officer Meyers again ordered Plaintiff out of the vehicle. [Ex. A, pp. 241:12 - 246:17, 321:2 – 324:24 and JX 1 – JX 2 of Group Ex. B.] Plaintiff refused to get out of the vehicle. [Id.] Because Plaintiff again refused to get out of the vehicle, Officer Meyers unlocked the vehicle's driver's side door and he, with Officer McCue's assistance, overcame Plaintiff's resistance by forcibly removing Plaintiff from the vehicle. [Ex. A, pp. 241:12 - 246:17, 321:2 – 324:24, 354:3 – 354:12 and JX 1 – JX 2 of Group Ex. B.]

When the Officers pulled Plaintiff out of the car, they did not know how much force it would take to pull Plaintiff, who did not exit the vehicle willingly and tensed up, out of the car. [Ex. A, pp, 180:9 – 14, 189:8-13, 276:16 – 278:12, 375:24 – 375 and JX 1 – JX 2 of Group Ex. B.] In order to gain control of Plaintiff for handcuffing, the Officers pushed Plaintiff against the van parked next to Plaintiff's vehicle. [Id.] Plaintiff also resisted the Officer's attempts to handcuff

3

him. [Ex. A, pp. 374:5 – 12, 377:11 - 380:10 and JX 1 – JX 2 of Group Ex. B.] Officer McCue initially was holding Plaintiff's neck and shoulder area when he and Officer Myers pushed Plaintiff against the van; Officer McCue eventually placed his hand on the back of Plaintiff's head and held it against the van. [Ex. A, p. 354:13 – 17 and JX1, JX 2, PX 23 A and 23 B of Group Ex. B.]

Removing Plaintiff from the vehicle and pushing him against the van to handcuff him happened very quickly—under 10 seconds. [Ex. A, pp. 245:10 – 12,367:14 -17, 377:3 – 7, JX 1 – JX 2 of Group Ex. B.] The time between the Officers pulling Plaintiff out of his vehicle and Plaintiff hitting his head on the van was approximately three to four seconds. [JX 1 – JX 2 of Group Ex. B.] The only force used was to get Plaintiff out of the car and handcuff him; after Plaintiff was handcuffed no additional force was used by the Officers. [Ex. A, p. 224:18 – 248:3 and JX 1 – JX 2 of Group Ex. B.]

Plaintiff bumped the right side of his forehead on the van window. [Ex. A, pp. 247:3-248:3, JX 1 and PX 22 D of Group Ex. B.] Plaintiff was offered medical attention but refused it. [Ex. A, p. 309:8 – 13.] Plaintiff saw a doctor approximately five days after the incident; the bump on his forehead was gone. [Ex. A, pp. 310:10 – 15, 339:18 – 340:2.] Although Plaintiff experienced dizziness and headaches, they did not last more than seven days after the incident. [Ex. A, pp. 311:16 – 25.] After the incident, Plaintiff continued to work with the Aurora Police Department at various events including car shows. [Ex. A, pp. 312:23 – 313:12, 314:16 - 22.]

The Officers inability to see clearly through the tinted windows, in concert with Plaintiff's continued refusal to obey Officer Meyers' thirteen orders to step out of the car, Plaintiff rolling up the driver's side window, and the group of people forming behind him whom he did not know, caused Officer Meyers, with Officer McCue's assistance, to forcibly remove Plaintiff from his vehicle. [Ex A, pp. 271:17-272:12, 274:3 – 375:3.]

4

After closing arguments, the jury returned a verdict in favor of Officer Meyers and against Officer McCue, assessing $50,000 in compensatory damages and $1 million in punitive damages. [Ex. A, pp. 481:19 – 482:10.]

## ARGUMENT

### *Rule 50(b) Motion*

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law). *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) In determining whether to resolve an issue as a matter of law, the district court must consider all of the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. Evidence supporting the moving party can be considered insofar as it is uncontroverted, unimpeached, and from disinterested witnesses. *Id.* at 151. The applicable standard of review mirrors that of summary judgment, except that instead of considering the fruits of discovery, the court considers the evidence presented at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

**I.    McCue's Use of Force Was Reasonable Under the Fourth Amendment.**

A claim that a law enforcement officer used excessive force when effectuating an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010)). An officer's determination of the appropriate level of force to use must be measured from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) *citing Graham v.*

*Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(the facts of the matter should not be viewed with hindsight's distorting lens).

When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating (1) the severity of the suspected crime, (2) whether the suspect posed an immediate threat to the officer on the scene or others, and (3) whether the suspect was actively resisting or attempting to evade arrest. *Avina v. Bohlen*, 882 F.3d at 678. *See also Graham v. Connor*, 490 U.S. 386, 396 (1989). The court's goal in examining these factors is to determine whether the force used to seize the suspect was excessive in relation to the danger he posed if left unattended. *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (citation and quotations omitted). If the undisputed material facts establish that the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to "second-guess" the officer's action. *Id.* (citing *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003)). Analysis of excessive-force claims is an objective one based on the information the officers had at the time. *Id.*

The totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances must be considered. *Horton v. Pobjecky, et al*, 883 F.3d 941, 948 (7th Cir. 2003). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Nabors v. City of North Chicago,* 2021 WL 5493234, *8 (N.D. Ill. 2021)(slip copy) *citing Graham*, 490 at 396–97, 109 S.Ct. 1865.

The undisputed facts in this matter demonstrate that Plaintiff was non-compliant from the

6

moment Officer Meyers approached Plaintiff the second time. Plaintiff refused to exit his vehicle even after being ordered to do so at least 13 times. The evidence demonstrates that Plaintiff made false promises to Officer Meyers to exit his vehicle. The Plaintiff first stated he would get out of the car once the Defendant Officers called a supervisor but, when a supervisor was called, he stated he wouldn't exit the vehicle until he arrived. The Plaintiff clearly had no intention of obeying Officer Meyers' orders. Moreover, it is undisputed that the Plaintiff used his car window to threaten Officer Meyers when he continuously rolled up his window, knowing that Officer Meyers' fingers were in the way, despite Officer Meyers' orders to stop doing so, thus forcing Officer Meyers to break the vehicle's window. Additionally, it is undisputed that up and until Plaintiff began rolling up his window, Officer Meyer's actions were an exercise of temperance.

Even after his car window was broken, Plaintiff continued to refuse to exit his vehicle. Plaintiff, after eight minutes of verbally refusing to follow Officer Meyers' orders, did not say, "I surrender" or "Stop" or "I give up." In fact, he said nothing, apparently assuming that his silence would indicate surrender to the Officers. Additionally, the video evidence and the testimony demonstrate that Plaintiff did resist arrest. Plaintiff, Juanita Yanez and Cynthia Yanez all testified that Plaintiff never willingly exited his vehicle. Not when Officer Meyers asked him 13 times to exit his vehicle, not when Officer Meyers unlocked the vehicle, and not when the Officers removed Plaintiff from his vehicle.

It was under this set of circumstances that Officer Meyers unlocked the vehicle, and the Defendant Officers made the split-second decision to remove Plaintiff from his vehicle and to push him against a van to assist in handcuffing him. *See e.g. Nabors v. City of North Chicago,* 2021 WL 5493234 (N.D. Ill. 2021)(slip copy)(the court found the officers' use of force was reasonable where the amount of physical force used by the defendant officers was brief and tailored to the objective

7

of handcuffing the plaintiff.) *See also Williams v. Brooks*, 809 F.3d 936 (7th Cir. 2016)(reasonable amount of force was used when plaintiff refused to follow the defendant officer's orders.)

Moreover, the 10 seconds of video evidence which captured the force used, including the three to four seconds between the Officers pulling Plaintiff out of his vehicle and Plaintiff hitting his head on the van, establishes that due to Plaintiff's resistance and the momentum of pulling him out of the car, Plaintiff's head hit the van. Plaintiff's head hit the van once and, after Plaintiff was secured by the Officers, there was no additional force used by them.

Lastly, Plaintiff's injury was relatively minor. He testified he did not experience symptoms for longer than seven days and the "bump" on his head was not present when he saw the doctor five days after the incident. Thus, based on the above, this Court should grant Defendants' motion for judgment as a matter of law pursuant to Federal Rules of Civil Procedure, R. 50(b) and reverse the jury's verdict.

**II.     Officer McCue Is Entitled to Qualified Immunity**

Officer McCue is entitled to qualified immunity. Qualified immunity "protects actions in the hazy border between excessive and acceptable force." *Mullenix v. Luna*, 577 U.S. 7, 18, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015). To thwart qualified immunity, the plaintiff has to prove two things: "first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1163–64 (7th Cir. 2014), *Pryor v. Corrigan*, 124 F.4th 475, 489–90 (7th Cir. 2024)

Here, the Officers had Plaintiff in handcuffs in less than 10 seconds after they pulled Plaintiff from his vehicle. Even more importantly, the time between the Officers pulling Plaintiff out of his vehicle and Plaintiff hitting his head on the van was approximately three to four seconds. Under Illinois law, Officer McCue is entitled to qualified immunity because "[n]o case clearly

8

establishes that a reasonable officer must reassess his force that quickly." *Brumitt v. Smith*, 102 F.4th 444, 448 (7th Cir. 2024) (holding because the officer's use of force occurred for a time amounting to seconds, the officer was entitled to qualified immunity). Moreover, Illinois law "does not require officers to alter the degree of force they use 'at the precise second' the threat changes" *Snukis v. Taylor*, No. 24-1946, 2025 WL 2104182, at *4 (7th Cir. July 28, 2025) citing *Brumitt*, 102 F.4th at 448. *See also, Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("The Fourth Amendment requires reasonableness, not immediacy."). Moreover, "when officers are forced to make 'split-second judgments' in 'tense, uncertain, and rapidly evolving' circumstances, we give them considerable leeway 'about the amount of force that is necessary' to subdue a suspect. *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. Thus, under these circumstances, Officer McCue is, at the very least, entitled to qualified immunity and this Court should grant Defendants' motion for judgment as a matter of law pursuant to Federal Rules of Civil Procedure, Rule 50(b) and reverse the jury's verdict.

### *Rule 59(a) & (e) Motion for a New Trial and Remittitur*

Rule 59 permits a party to move for a new trial or alter or amend the judgment. Fed. R. Civ. P. 59. The court may "grant a new trial on some or all of the issues." Fed. R. Civ. P. 59(a). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).

Rule 59 allows for a new trial only if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (quoting *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996)). When considering whether the jury's verdict goes

9

against the manifest weight of the evidence, the court performs its own neutral assessment of the evidence presented (*Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019) (quoting *Mejia v. Cook Cty.*, 650 F.3d 631, 635 (7th Cir. 2011)). In assessing a motion for a new trial, the judge "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia*, 650 F.3d at 633 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses[.]")) When considering a motion for a new trial, "the evidence must be viewed in the light most favorable to the prevailing party." *Carter v. Moore*, 165 F.3d 1071, 1079 (7th Cir. 1998).

Under Rule 59(e), a court may also "alter or amend a judgment." Fed. R. Civ. P. 59(e). This includes remittitur. *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp.3d 1000, 1007 (N.D. Ill. 2016); see also *Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020). On review, the court must give a jury's damage determination "substantial deference" but "must also ensure that the award is supported by competent evidence." *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985). If an award is excessive, "it is the duty of the trial judge to require a remittitur or a new trial." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65-66, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); see also Baier, 175 F. Supp.3d at 1007 (when "damages are excessive, the proper remedy is remittitur").

Remittitur is appropriate for damage awards that are "monstrously excessive," have no rational connection to the evidence, and are not "roughly comparable to awards made in similar cases." *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016). Movants must show that "no rational jury could have rendered a verdict against them." *King v. Harrington*, 447 F.3d

531, 534 (7th Cir. 2006). Courts use the same analysis for Rule 59 motions as summary judgment, except they "now know exactly what evidence the jury considered in reaching it verdict." *Harvey v. Off. of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004).

### III. THE DAMAGES ENTERED AGAINST OFFICER McCUE WERE UNWARRANTED.
***The jury's damages award was against the manifest weight of the evidence.***

When considering whether the jury's verdict goes against the manifest weight of the evidence, a court analyzes the "general sense of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia*., 650 F.3d at 633 But "[a] verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir.2008) (quoting *King v. Harrington*, 447 F.3d 531, 534 (7th Cir.2006)).

Here, the jury award of compensatory damages in the amount of $50,000 and $1 million in punitive damages was against the manifest weight of the evidence. The force used by the Officers resulted in a bump on Plaintiff's forehead and headaches and dizziness that lasted approximately seven days. Moreover, Plaintiff's interactions with Officer Meyers and McCue did not affect Plaintiff's interactions with the Aurora Police Department after the incident and will not deter him from future interactions with the Aurora Police Department. The evidence establishes that Plaintiff's injuries, both physical and emotional, were limited. As a result, the jury's award of $50,000 compensatory damages and $1 million punitive damages is excessive and against the manifest weight of the evidence. Thus, this Court should remit the damages or order a new trial for Officer McCue pursuant to Rule 59(a) & (e).

***The jury's punitive damages award violates Officer McCue's Fourth and Fourteenth Due Process Rights and should be remitted or, in the alternative, a new trial ordered.***

In the alternative, if this Court finds that the $50,000 compensatory damages was not against the manifest weight of the evidence and that Officer McCue's conduct warrants punitive

11

damages, this Court should find that the $1 million punitive damages award violated Officer McCue's due process rights under the Fourth and Fourteenth Amendments and remit the punitive damages.

Punitive damages in Section 1983 cases are only appropriate when a defendant's conduct was driven "by evil motive or intent" or when "it involve[d] reckless or callous indifference to the federally protected rights of others." *Stewardson v. Titus*, 126 F.4th 1264, 1271–72 (7th Cir. 2025) (citations omitted). However, because punitive damages are "retributive in nature," they must comply with principles of due process. *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019). The Supreme Court has identified three "guideposts" courts must consider when reviewing a punitive damages award. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Those are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id.

### *Degree of reprehensibility*

Of the three guideposts, reprehensibility "is the most significant factor." *Stewardson*, 126 F.4th at 1272 (citations omitted). Courts must consider whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. Id.

Here, the five reprehensibility factors favor Officer McCue. Although Plaintiff was physically injured as a result of his interaction with the Officers, his injuries were minimal. Additionally, there is no evidence that Officer McCue's actions were indifferent to or in reckless

12

disregard of Plaintiff's safety or were the result of intentional malice, trickery, or deceit. Indeed, Officer McCue was merely assisting Officer Meyers, he testified that his initial intent was to grab Plaintiff's arm, and there is no evidence that Officer McCue intentionally pushed Plaintiff's head into the van. Moreover, this was an isolated incident, and the Officers did not subject Plaintiff to any force after he was handcuffed. Lastly, there is no evidence that Plaintiff was a financially vulnerable target. As a result, the first guidepost of reprehensibility favors Officer McCue.

### *Ratio*

The second guidepost directs courts to compare "the actual or potential harm suffered by the plaintiff and the" jury's ultimate "punitive damages award." *State Farm*, 538 U.S. at 418, 123 S.Ct. 1513. Courts often evaluate this factor with reference to the "ratio between the compensatory and punitive damages." *Saccameno*, 943 F.3d at 1088. As a rule of thumb, an award that exceeds a single-digit ratio generally violates due process. *Stewardson*, 126 F.4th at 1273 citing *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513. Here, the ratio between the compensatory damages award, $50,000 and the punitive damages award, $1 million, is 20:1, which far exceeds the recommended single-digit ratio, and constitutes a windfall for Plaintiff, thus violating Officer McCue's due process rights.

### *Comparable Cases*

For the third and final guidepost, courts compare the punitive damages award at issue to "the civil penalties authorized or imposed in comparable cases." *Stewardson*, 126 F.4th at 1274 citing *Gore*, 517 U.S. at 575, 116 S.Ct. 1589. Here the punitive damages award assessed against Officer McCue far exceeds those assessed against similarly situated defendants. Indeed, officers who were found to use significantly more force were assessed lower damages. *See* e.g. *Stewardson v. Titus*, 126 F.4th at 1274 (jury awarded $400,000 in compensatory damages and $850,000 in punitive damages. ); *Hendrickson v. Cooper*, 589 F.3d 887, 891 (7th Cir. 2009) (affirming

13

$125,000 in punitive damages); *Kunz*, 538 F.3d at 679 (affirming $90,000 in punitive damages); *Degorski v. Wilson*, No. 04 C 3367, 2014 WL 3511220, at *4 (N.D. Ill. July 16, 2014) (remitting punitive damages to $150,000); *Kidis v. Reid,* 976 F.3d 708, 717 - 19 (6th Cir. 2020)(remitting punitive damages to $50,000). *See also* attached hereto as Exhibit C, the Jury Verdict Reporter for excessive force cases within the last ten years; punitive damages are approximately a 1:1 ratio or less. Thus, based on the above and pursuant to Rule 59(e), this Court should remit the punitive damages to $50,000 or less.

**IV.   THIS COURT ERRED WHEN IT RULED DEFENDANTS COULD NOT INTRODUCE PLAINTIFF'S RELEASE DATE FROM PRISON**

This Court erred when it did not permit Defendants to introduce evidence that Plaintiff was not released from prison until 2017, which determination prejudiced the Defendants. To determine whether an evidentiary ruling warrants a new trial, the Court determines whether there was an error that had a "substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Lewis v. Chi. Police Dep't,* 590 F.3d 427, 440 (7th Cir. 2009).

On April 21, 2025, this Court ruled that Plaintiff would be permitted to present evidence and argue that his felony conviction was in 1994 in order to minimize the weight of the conviction for impeachment purposes and in allowing the jury to evaluate his credibility. Defendants argued that they should in turn be permitted to introduce evidence that Plaintiff was not released from prison until 2017. This Court denied Defendants' request, holding that the probative value of this evidence did not outweigh the potential for prejudice.

The Seventh Circuit has established clear rules for calculating the ten-year time limit under which felony convictions fall under Rule 609(a)'s more lenient standard for admissibility. *See United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008). Courts have clearly held that "[t]he

14

clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of conviction." *Id.* Furthermore, under Rule 609(a), evidence of prior convictions is permitted for the purpose of impeaching a civil witness, so long as the probative value outweighs the prejudicial value under a Rule 403 analysis. *Charles v. Cotter*, 867 F. Supp. 648, 655 (N.D. Ill. 1994). As courts have observed, "Rule 609 embodies the proposition that felons perjure themselves more often than other, similarly situated witnesses." *Id.* at 656. Furthermore, courts have implemented limitations on the testimony to help minimize the danger of unfair prejudice. *See Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1072 (N.D. Ill. 1999). These include limiting the cross-examination "to an identification of each crime charged, the disposition date and the disposition." *Id.* Here, Plaintiff's release from confinement in 2017 falls within the 10-year period. Allowing Plaintiff to undermine the probative value of his conviction by arguing that it occurred in 1994 and extolling Plaintiff's "Good Samaritan" acts post release without allowing Defendants to introduce evidence to test his credibility by introducing his 2017 release date prejudiced the Defendants. As such, based on the above, this Court should grant Defendants' Rule 59(a) motion for a new trial for Officer McCue.

WHEREFORE, Defendants, C. McCUE and the CITY OF AURORA, respectfully pray that this Honorable Court grant their Rule 50(b) and Rule 59(a) & (e) motion.

Respectfully submitted,
C. McCUE and the CITY OF AURORA
By:     s/Deborah A. Ostvig
       One of Their Attorneys

Michael E. Kujawa, ARDC# 6244621
Deborah A. Ostvig, ARDC# 6287031
Schain, Banks, Kenny & Schwartz, Ltd.
mkujawa@schainbanks.com
dostvig@schainbanks.com